UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHI BAI, et al., | No. 2:24-cv-00807-DJC-DB |
| Plaintiffs, | |
| v. | **ORDER** |
| CMB EXPORT INFRASTRUCTURE INVESTMENT GROUP 48, LP, et al., | |
| Defendants. | |

Plaintiffs are 185 foreign nationals who claim they lost $92.5 million in investment funds in part due to Defendants' acts or omissions. Plaintiffs allege the Defendants later conspired to conceal their errors from Plaintiff by filing sham lawsuits in California and New York. As Plaintiffs seek to include conspiracy claims against Lewis Brisbois Bisgaard & Smith based on their representation of their client, Plaintiffs filed a Petition to Allow Complaint Against Attorney for Civil Conspiracy Pursuant to California Civil Code § 1714.10 ("Petition") which is presently before the Court. (Pet. (ECF No. 4).) Given the exception to the pre-filing requirement in section 1714.10(c) that is present in this case, the Court concludes that no petition was required.

////

////

# BACKGROUND

## I. Factual Background

Plaintiffs are 185 foreign nationals who made investments in order to qualify for federal EB-5 visas. (Pet. ¶ 4.) CMB Export Infrastructure Group 48 ("Group 48") was formed as an investment vehicle to facilitate these investments. (Compl. (ECF No. 1) ¶ 62.) Defendants CMB Export LLC ("CMB Export") and NK Immigration Services, LLC ("NK") served as Co-General Partners of Group 48 and Plaintiffs were made Limited Partners. (*Id.*) Group 48 provided a $450 million loan to the redevelopment of the Fairmount Century Plaza (the "Project"). (Pet. ¶ 3-4.) The funds for the loan included Plaintiffs' $92.5 million investment. (*Id.*)

To fully fund the Project, developer Next Century Partners, LLC ("Next Century") obtained a total of $1.016 billion in funding via three loans which were organized in three tranches of debt. These were: (1) a "Senior Loan" of $446 million from J.P. Morgan Chase; (2) a "Senior Mezzanine Loan" of $120 million from Colony Distressed Credit and Special Situation Fund IV, L.P. ("CDCF IV"); and (3) a "Junior Mezzanine Loan" of $450 million from Group 48, which included Plaintiffs' investments. (Pet. ¶¶ 71-72.) After the Project later faced issues, Next Century sought additional funding to help complete the Project in 2020 and negotiated an agreement with Reuben Brothers, LTD, through its administrative agent Motcomb Estates LTC (collectively the "New Lenders"). (*Id.* ¶ 3.) On July 14, 2020, Defendant Neal Lee, Senior VP of CMB Export, and LB's "corporate attorneys" were emailed a Term Sheet that set forth many of the terms of an agreement that would bring in the financing of the New Lenders. (*Id.* ¶ 19.)

On September 1, 2020, the New Lenders entered into an agreement with NCPMB, LLC, the owner of Next Century, entitled Third Amended and Restated Mezzanine Loan and Security Agreement ("Third Amended Agreement"). (*Id.* ¶ 6.) Pursuant to that agreement, the New Lenders would provide a $275 million loan with a maturity date less than a year later on July 9, 2021, with the option to extend that

date "upon satisfaction of certain conditions" that Plaintiffs claim were impossible to meet. (*Id.* ¶ 8.) In exchange, the New Lenders became the successor of the Senior Mezzanine Loan, with priority over CDCF IV, and also acquired a portion of the Senior Loan. (*Id.* ¶ 7.) The New Lenders and CDCF IV entered into a separate Participation Agreement which provided that the New Lenders would take over as the administrative agent of the Senior Mezzanine Loan and CDCF IV agreed not to transfer any of its interest to an EB-5 lender or any affiliates of such lenders without consent of the New Lenders. (*Id.* ¶¶ 9–10.) The predecessor to the Participation Agreement was the Term Sheet which was previously provided to Defendant Lee and Defendant LB's attorneys. (*Id.* ¶ 19.) The Term Sheet "contemplated the drafting of, and disclosed many of the terms of, the Participation Agreement." (*Id.*)

The combined effect of the Third Amended Agreement and the Participation Agreement between the New Lenders and CDCF IV was that any foreclosure under the Senior Loan or Senior Mezzanine Loan would result in complete loss of Group 48's investment. (*Id.* ¶¶ 7, 10.) Despite this, Group 48 signed the Fourth Amendment to Intercreditor Agreement, by which Group 48 consented to the terms of the Third Amended Agreement. (*Id.* ¶ 11.)

NCPMB was ultimately unable to repay the New Lenders' loan or meet the requirements for an extension by the July 9, 2021 maturity date. (*Id.* ¶ 12.) Three days later, J.P. Morgan Chase sent Group 48 a notice of a "Purchase Option Event" which gave Group 48 the one-time right to purchase the Senior Loan due to NCPMB's default on the Senior Loan. (*Id.* ¶¶ 13–14.) Group 48 did not notify Plaintiffs of the opportunity to purchase the Senior Loan. (*Id.* ¶ 15.)

In August 2022, Group 48 was notified by the New Lenders that they intended to foreclose against the Senior Mezzanine Loan collateral, which was NCPMB's ownership of Next Century. (*Id.* ¶ 16; Compl. ¶ 16.) Group 48, represented by LB, filed suits in California and New York state courts seeking to stop the foreclosure actions and alleging that the New Lenders had concealed the Participation

Agreement from Group 48 and "tricked them" into signing the Fourth Amendment to the Intercreditor Agreement. (Pet. ¶ 17–18.) In March 2023 during discovery, Group 48 produced the Term Sheet that was emailed to Defendant Lee and LB's corporate attorneys two months prior to Group 48 signing the Fourth Amendment to Intercreditor Agreement. (*Id.* ¶ 19.) The suit filed in New York was dismissed by the New York Appellate Court, though CMB Export has filed a motion for reconsideration or leave to appeal that decision. (Pet. ¶ 21; Defs.' Opp'n at 7.) The action filed in California is still ongoing. (Defs.' Opp'n at 7.)

Plaintiffs allege that LB and Group 48 conspired to cover up their failure to disclose and act on the Term Sheet by initiating "sham lawsuits" against the New Lenders and others. (*Id.* ¶¶ 25, 30.) Group 48 allegedly paid over $3.8 million to LB from partnership assets to file and pursue these actions and later requested additional funds from Plaintiffs to further fund them. (*Id.* ¶ 25.)

## II. Procedural History

Plaintiffs filed the operative complaint in this action on March 14, 2024, and thereafter filed the Petition presently before the Court. Pursuant to Cal. Civ. Code § 1714.10(a), the Court ordered service of the Petition on Defendants and ordered Defendants to file any opposing affidavits. (ECF No. 5.) It also ordered the parties to submit separate briefing on whether Section 1714.10 applied to actions brought in federal court. The briefing on the applicability of Section 1714.10 is complete (Pls.' Br. On Applicability (ECF No. 20); Def.'s Br. on Applicability (ECF No. 15)) as is the briefing on the underlying Petition (Opp'n to Pet. (ECF No. 14); Pls.' Reply (ECF No. 19)).[1]

////

////

---

[1] Only Defendant LB has opposed the Petition or filed briefing on the applicability of Section 1714.10. Additionally, though Plaintiffs and Defendant LB are typically referred to as "Petitioners" and "Respondent" respectively for purposes of such motions, for simplicity the Court will refer to them as "Plaintiffs" and "Defendant".

4

## CALIFORNIA CIVIL CODE § 1714.10

Section 1714.10 of the California Civil Code requires that a plaintiff seeking to include a claim based on an alleged conspiracy between an attorney and their client must first seek leave of the court to do so by filing a petition. The court may then permit the filing of that complaint if the plaintiff establishes that there is a reasonable possibility that they will prevail. Cal. Civ. Code § 1714.10(a). Failure to first obtain leave of the court where it is required by Section 1714.10 is a defense. Cal. Civ. Code § 1714.10(b). Subsection (c) of Section 1714.10 provides two exceptions to this requirement "where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." Cal. Civ. Code § 1714.10(c); *see also Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 816 (2005) *as modified on denial of reh'g* (Aug. 25, 2005). "This rule exists to impose liability on an attorney when 'he or she is acting in more than just a representative capacity.'" *Tatung Co. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1185 (S.D. Cal. 2016) (quoting *Berg & Berg Enterprises*, 131 Cal. App. 4th at 818).

## APPLICABILITY OF CALIFORNIA CIVIL CODE § 1714.10

While the parties disagree both over whether this Court must apply the requirements of Section 1714.10 under the *Erie* doctrine and whether Plaintiff's claims satisfy the requirements to proceed on those claims, these arguments are ultimately meaningless as Plaintiff is not subject to the prefiling requirement of Section 1714.10.

Under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), when courts exercise diversity jurisdiction over an action, they apply the state substantive law on matters that are not governed by the Constitution or federal statutes, and federal procedural law. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 426–27 (1996). Plaintiff raises two arguments about the application of Section 1714.10 to the present action under *Erie* doctrine principles: (1) Section 1714.10 is not applicable to Plaintiff's

5

federal claims as the Court applies federal substantive law on matters governed by federal statutes; (2) Section 1714.10 does not apply to Plaintiff's state law claims as it is procedural in nature.  (*See* Pls.' Br. on Applicability.)

As an initial point, Plaintiff is correct that Section 1714.10 does not apply to Plaintiff's federal causes of action (those being his First and Second Causes of Action brough under 18 U.S.C. § 1962).  As those are claims brought under a federal statute, they are subject to both federal substantive and procedural law.  *See Gasperini*, 518 U.S. at 426–27.  Thus, Section 1714.10 would not apply to these claims, regardless of its status for purposes of *Erie*.  Defendant does not contest this point.  (*See* Def.'s Br. on Applicability.)

More broadly, whether Section 1714.10 is substantive or procedural is ultimately irrelevant and the Court need not reach that issue as Plaintiffs are not subject to the prefiling requirement of subsection (a) due to the application of subsection (c).  Though Plaintiffs have elected to prefile their complaint, they also expressly claim that their conspiracy claims fall within the exceptions for the prefiling under subsection (c).  (*See* Pet. ¶ 32.)  Where the exceptions in that subsection apply, the claims in question are *exempt from the prefiling requirement*.  *See* Cal. Civil Code § 1714.10(c) ("This section *shall not apply* to a cause of action against an attorney for a civil conspiracy with his or her client, where (1) the attorney has an independent legal duty to the plaintiff, or (2) the attorney's acts go beyond the performance of a professional duty to serve the client and involve a conspiracy to violate a legal duty in furtherance of the attorney's financial gain." (emphasis added)); *see also Favila v. Katten Munchin Rosenman LLP*, 188 Cal. App. 4th 189, 209 (2010) ("subdivision (c) [creates] *exceptions from the procedural requirements* of section 1714.10" (emphasis added)).  Thus, in cases where "[a] claim falls within section 1714.10, subdivision (c)(1)[,] the procedural requirements of section 1714.10, subdivision (a), do not apply (that is, the plaintiff need not demonstrate a probability of prevailing on the merits);
////

and the statute serves no screening function whatsoever." *Favila*, 188 Cal. App. 4th at 209-10.

Plaintiffs have made it clear that they seek to bring civil conspiracy claims against Defendant LB based both on the allegations that Defendant LB owed an independent legal duty to Plaintiff and that Defendant LB's actions went beyond the performance of a professional duty to Defendant CMB Export. (*See* Pet. ¶ 32.) Though Defendant LB will undoubtedly contest that Plaintiff's claims do not fall within these exceptions and are thus barred by the agent immunity rule, resolving that conflict would essentially be a resolution on the merits and is not the purpose of the screening function of Section 1714.10. *See Favila*, 188 Cal. App. 4th at 209-10.

Because subsection (c) of Section 1714.10 provides that Plaintiff need not file a petition in this case, the question of whether Section 1714.10 is actually substantive or procedural is ultimately irrelevant. Accordingly, Plaintiff's petition to file his complaint containing these allegations is denied as moot, and Plaintiff may file an unredacted version of his Complaint containing conspiracy claims against Defendant LB.

This decision is by no means a determination as to whether Plaintiff's claims are barred by the agent immunity rule or fall within the exceptions to that rule.[2] By this order, Defendants are not precluded from challenging Plaintiff's claims on these grounds. These arguments, if raised, will be adjudicated in the standard course of litigation.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiffs' Petition to Allow Complaint Against Attorney (ECF No. 4) is DENIED AS MOOT.

////

---

[2] The Section 1714.10(c) exceptions are designed to mirror the recognized exceptions to the agent immunity rule. *See Favila*, 188 Cal. App. 4th at 208-09; *see also Doctors' Co. v. Superior Court*, 49 Cal. 3d 39, 44 (1989).

7

2. Within three (3) days of this order, Plaintiffs must file an unredacted version of their complaint on the docket.  This version will serve as the current operative complaint in this action.

3. All Defendants shall have thirty (30) days from the date of this order to file responsive pleadings to Plaintiff's complaint.[3]

4. Plaintiffs' Request to Seal is DENIED AS MOOT.

IT IS SO ORDERED.

Dated:  **May 31, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – bai24cv00807.1714.10

---

[3] The Court previously issued an order based on the stipulation of the parties, setting a 30-day deadline to filling responsive pleadings for the "CMB Defendants".  (ECF No. 18.)  Given Plaintiff will be permitted to proceed on his claims against Defendant LB, the Court now sets the same schedule for responsive pleadings for all defendants for purposes of simplicity.