1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11    SHI BAI, et al.,                        No. 2:24-cv-00807-DJC-SCR

12                        Plaintiffs,

13            v.                              **<u>ORDER</u>**

14    CMB EXPORT INFRASTRUCTURE
      INVESTMENT GROUP 48, LP, et al.,
15
16                        Defendants.

17            Plaintiffs are 191 foreign nationals who claim they lost $92.5 million in

18    investment funds in part due to Defendants' acts or omissions in connection with a

19    redevelopment project.  Presently before the Court are a Motion to Dismiss filed by

20    the CMB Defendants (ECF No. 42) and a Motion to Dismiss filed by Defendant Lewis

21    Brisbois Bisgaard & Smith LLP (ECF No. 44).

22            For the reasons stated below, the Court will grant Defendant Lewis Brisbois

23    Bisgaard & Smith LLP's Motion to Dismiss in its entirety and will grant in part and deny

24    in part CMB Defendants' Motion to Dismiss.[1]

25    ////

26    ////

27    _____

28    [1] The Court simultaneously addresses the Motions to Dismiss in this action and the related action, *Fang v. CMB Export Infrastructure Investment Group 48, LP*, No. 2:24-cv-01618-DJC-SCR.

**BACKGROUND**

The Court previously summarized the background of this action in its prior order (*see* ECF No. 25 at 2–4) and the facts are well known to the Court and parties. In short, Plaintiffs are foreign nationals who each invested $500,000 in Group 48[2], a limited partnership set up to facilitate investment in the Century Plaza redevelopment project (the "Project") partially using funds from EB-5 investors such as Plaintiffs. Defendants CMB Export and NK Immigration Services, LLC ("NK") served as Co-General Partners of Group 48, and individual EB-5 investors were made limited partners of Group 48. Unfortunately, the Project faced financial difficulty, resulting in the loss of Group 48's investment, including Plaintiffs' individual investments. Plaintiffs allege that Defendants were partially responsible for the loss of Plaintiffs' investments and subsequently sought to conceal this fact from Plaintiffs.

This action presently proceeds on Plaintiffs' First Amended Complaint ("FAC" (ECF No. 37)). The CMB Defendants (Defendants NK, Group 48, CMB Export, Neal Lee, and Patrick Hogan) and Defendant Lewis Brisbois Bisgaard & Smith LLP ("Louis Brisbois") have each filed Motions to Dismiss that are fully briefed. (CMB Mot. (ECF No. 42); Opp'n to CMB Mot. (ECF No. 61); CMB Reply (ECF No. 64); Louis Brisbois Mot. (ECF No. 45); Opp'n to Louis Brisbois Mot. (ECF No. 55); Louis Brisbois Reply (ECF No. 63).) The Court heard oral argument on both Motions on October 31, 2024, at which time the matter was submitted.[3] Given the overlap in some of the arguments

---

[2] Group 48's full name is CMB Export Infrastructure Investment Group 48, LP. In the First Amended Complaint, Plaintiffs refer to Group 48 as "CMB" while in motion practice the parties all refer to it as "Group 48" instead. Given the risk of confusion due to the similarity in name between two parties (CMB Export LLC and CMB Export Infrastructure Investment Group 48, LP) and a related non-party (CMB Regional Centers), the Court refers to the limited partnership, (CMB Export Infrastructure Investment Group 48, LP) as "Group 48", CMB Export LLC as "CMB Export", and CMB Regional Centers by its full name.

[3] The Court notes that while it was preparing this Order, Defendant Louis Brisbois filed a "Notice of Factual Developments" (ECF No. 66) concerning the state court action, and Plaintiffs filed a response (ECF No. 67). The Court has not considered any of the information raised in either document in reaching its decisions in this Order and, on review of that Notice and Response, the Court's analysis is unaffected by the information they provide.

1    raised within both Motions, the Court will address them in the together in this Order,

2    with overlapping grounds for dismissal addressed jointly where appropriate.

3                **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

4        CMB Defendants first move to dismiss Plaintiff's claims against Defendant Neal

5    Lee under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

6    **I.    Legal Standard**

7    **A. Personal Jurisdiction Generally**

8        Rule 12(b)(2) allows a party to assert a lack of personal jurisdiction as a defense

9    and request dismissal of the suit.  Fed. R. Civ. P. 12(b)(2).  "Although the defendant is

10   the moving party on a motion to dismiss [for lack of personal jurisdiction], the plaintiff

11   bears the burden of establishing that jurisdiction exists." *Rio Props., Inc. v. Rio Int'l*

12   *Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  "[I]n the absence of an evidentiary

13   hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to

14   withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606

15   F.3d 1124, 1127 (9th Cir. 2010) (*quoting Pebble Beach Co. v. Caddy*, 453 F.3d 1151,

16   1154 (9th Cir. 2006)).  "The court may consider evidence presented in affidavits to

17   assist it in its determination and may order discovery on the jurisdictional issues." *Doe*

18   *v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by*

19   *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citing *Data Disc, Inc. v. Sys. Tech.*

20   *Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)).  Facts presented by the plaintiff are

21   taken as true for the purposes of a 12(b)(2) motion to dismiss, except where

22   contradicted by an affidavit, and any "conflicts between the facts contained in the

23   parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding

24   whether a prima facie case for personal jurisdiction exists." *AT&T v. Compagnie*

25   *Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted); *see Mavrix*

26   *Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("We may not

27   assume the truth of allegations in a pleading which are contradicted by affidavit, but

28   ////

1    we resolve factual disputes in the plaintiff's favor." (citations and internal quotations

2    removed)).

3        "In exercising personal jurisdiction, a federal district court is constrained by the

4    Fourteenth Amendment's Due Process Clause and the long-arm statute of the state in

5    which it sits." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir.

6    2023).  California's long-arm statute allows the exercise of personal jurisdiction to the

7    extent allowed by the United States Constitution.  *See* Cal. Code Civ. Proc. § 410.10.

8    Accordingly, the Court need only assess whether the exercise of jurisdiction in this

9    case comports with due process.

10       **B.  General and Specific Jurisdiction**

11       "The Due Process Clause permits the exercise of personal jurisdiction if the

12   defendant has sufficient minimum contacts with the forum state such that the

13   maintenance of the suit does not offend traditional notions of fair play and substantial

14   justice." *Impossible Foods*, 80 F.4th at 1086.  Courts may have general or specific

15   jurisdiction over an entity depending on the nature and extent of that entity's contact

16   with the forum state.  A court may exercise general jurisdiction over a corporation in a

17   state where the corporation is "at home," which is the case when its "affiliations . . . are

18   so 'continuous and systematic' as to render [it] essentially at home in the forum State."

19   *Daimler*, 571 U.S. at 119 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*,

20   564 U.S. 915, 919 (2011)).  This is generally where the corporation is incorporated and

21   where it maintains its principal place of business.  *Id.*  Here, it is uncontested that the

22   Court does not have general jurisdiction over Neal Lee.  (*See* Opp'n to CMB Mot. at 3–

23   6 (arguing only that the Court has specific jurisdiction over Lee).)

24       Where general jurisdiction is lacking, courts may have specific jurisdiction over

25   corporations if there is sufficient contact with the forum state and the claims arise out

26   of that contact.  *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017)

27   ("[T]here must be 'an affiliation between the forum and the underlying controversy,

28   principally, [an] activity or an occurrence that takes place in the forum State and is

4

1   therefore subject to the State's regulation.'" (quoting *Goodyear*, 564 U.S. at 919)).  In

2   the Ninth Circuit, specific jurisdiction is determined by a three-prong test: "(1) the

3   defendant must either 'purposefully direct his activities' toward the forum or

4   'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2)

5   'the claim must be one which arises out of or relates to the defendant's forum-related

6   activities'; and (3) 'the exercise of jurisdiction must comport with fair play and

7   substantial justice, i.e. it must be reasonable.'"  *Axiom Foods, Inc. v. Acerchem Int'l,*

8   *Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*,

9   303 F.3d 1104, 1111 (9th Cir. 2002)).  "The plaintiff bears the burden of satisfying the

10  first two prongs of the test" while the burden of the third prong shifts to the

11  defendant.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.

12  2004).

13              **1. Purposeful Availment**

14          While the first prong of the specific jurisdiction test is often called the

15  "purposeful availment" prong, courts situationally apply either a purposeful availment

16  or purposeful direction analysis.  *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

17  *L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006).  The question of whether to

18  apply a purposeful direction or purposeful availment analysis "turns on the nature of

19  the underlying claims."  *Impossible Foods*, 80 F.4th at 1088 (citing *Ayla, LLC v. Alya*

20  *Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021)).  While there is no "rigid dividing line

21  between purposeful availment and purposeful direction[,]" purposeful direction is

22  generally preferred when analyzing tort claims as these claims typically involve fact

23  patterns where "a defendant's conduct primarily occurs outside the forum state."  *Id.*

24  at 1088–89.

25          "To have purposefully availed itself of the privilege of doing business in the

26  forum, a defendant must have performed some type of affirmative conduct which

27  allows or promotes the transaction of business within the forum state."  *Boschetto v.*

28  *Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citations and internal quotations

1  removed).  "A showing that a defendant purposefully availed himself of the privilege

2  of doing business in a forum state typically consists of evidence of the defendant's

3  actions in the forum, such as executing or performing a contract there."

4  *Schwarzenegger*, 374 F.3d at 802.  Likewise, purposeful direction involves intentional

5  contact with the forum state.  It is "the defendant's contacts with the forum State itself,

6  not the defendant's contacts with persons who reside there" that are relevant to the

7  inquiry.  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  The defendant's mere knowledge

8  that the plaintiff resides in the forum state "will not, on its own, support the exercise of

9  specific jurisdiction."  *Axiom Foods*, 874 F.3d at 1070.  However, "a defendant's

10 contacts with the forum State may be intertwined with his transactions or interactions

11 with the plaintiff . . . ."  *Walden*, 571 U.S. at 286.  Only purposeful contacts, and not

12 random, fortuitous, or attenuated contacts will give rise to personal jurisdiction.  *Id.*

13        **2.  Relation of Claim to Forum Activities**

14        The claims brought by the plaintiff must arise out of or relate to the defendant's

15 contacts with the forum in order for the court to exercise jurisdiction.  *Ford Motor Co.*

16 *v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021).  However, a strict causal

17 relationship is not required to satisfy the relation prong.  *Id.*  Rather, there need only

18 be a "connection" between the forum-related activity and the injury claimed.  *Id.*  The

19 Ninth Circuit employs a "but for" test to determine whether a plaintiff's claims arise out

20 of the defendant's forum-related activities.  *Menken v. Emm*, 503 F.3d 1050, 1058 (9th

21 Cir. 2007).

22        **3.  Reasonableness**

23        The final prong of the personal jurisdiction analysis examines whether the court

24 exercising jurisdiction would be reasonable.  *Menken*, 503 F.3d at 1058.  This

25 determination requires consideration of seven factors: "(1) the extent of the

26 defendants' purposeful interjection into the forum state's affairs; (2) the burden on the

27 defendant of defending in the forum; (3) the extent of conflict with the sovereignty of

28 the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the

1    most efficient judicial resolution of the controversy; (6) the importance of the forum to

2    the plaintiff's interest in convenient and effective relief; and (7) the existence of an

3    alternative forum." *Id.*

4    **II.    Analysis**

5        The FAC's allegations as to Defendant Lee are limited.  The FAC only states that

6    Defendant Lee was, at all relevant times, "the Senior Vice President of CMB Regional

7    Centers and NK Immigration Services and the Chief Financial Analyst of CMB Regional

8    Centers" and that "[o]n or about July 14, 2020, Defendant Lee and Louis Brisbois

9    partners Michael Platner and Wade Houser (both in charge of the CMB relationship at

10   [Louis Brisbois]), received an e-mail sending a draft Term Sheet for the additional

11   funding from the Lender."  (FAC ¶¶ 38, 91.)  Based on the second allegation, Plaintiffs

12   assert that either Defendants Lee and Louis Brisbois conspired to conceal the terms of

13   the Term Sheet, Third Amended Mezzanine Loan, and Fourth Amendment to the

14   Intercreditor Agreement from Plaintiffs; or that Defendant Louis Brisbois misled

15   Defendant Lee into believing the Term Sheet was not the operative terms of the

16   financing for the Project.  (FAC ¶¶ 113–14.)

17       Plaintiff Lee's status as a Senior Vice President of CMB Export does not itself

18   establish personal jurisdiction, regardless of whether CMB Export was a California

19   LLC.  In determining whether the Court has personal jurisdiction over Defendant Lee

20   for alleged tortious conduct, the Court must look to the actions attributed to

21   Defendant Lee personally, not those of CMB Export.  *Davis v. Metro Prods., Inc.*, 885

22   F.2d 515, 520 (9th Cir. 1989) ("[A] person's mere association with a corporation that

23   causes injury in the forum state is not sufficient in itself to permit that forum to assert

24   jurisdiction over the person.").  Thus, the only relevant factual allegations as to

25   Defendant Lee is that on July 14, 2020, he received an email containing the Term

26   Sheet along with Plaintiffs' proposed inference that Defendant Lee either conspired to

27   conceal information from the Plaintiffs or that Defendant Louis Brisbois misinformed

28   Defendant Lee.  (*see* FAC ¶¶ 91, 113–14.)

1    The simple receipt of an email would be insufficient to meet either the

2    purposeful availment or purposeful direction test as it does not involve any action by

3    Defendant Lee to either avail himself or direct action toward California.  Plaintiffs'

4    assertion that Lee may have concealed information from Plaintiffs is expressly

5    speculative within the FAC and there are no factual allegations that clearly tie

6    Defendant Lee's actions to California.  (*See* FAC ¶¶ 113–114.)  In opposition, Plaintiffs

7    argue that this case is analogous to *Burger King Corp. v. Rudzewikz*, 471 U.S. 462

8    (1985), because "Lee reached out beyond his resident state and negotiated with

9    residents and a developer in California to develop the . . . Project." (Opp'n to CMB

10   Mot. at 6.)  Plaintiffs go on to claim that Defendant Lee "participated in the (1)

11   negotiations and drafting of loan documents and (2) filing of a sham lawsuit in

12   California." (*Id.*)  The FAC does not contain any allegations of Defendant Lee's actions

13   in connection with negotiations and drafting of loan documents or the filing of sham

14   lawsuits in California.[4]

15       Accordingly, the FAC fails to allege facts that would establish that this Court has

16   personal jurisdiction over Defendant Lee.  The CMB Defendants' Motion to Dismiss

17   will be granted on these grounds.  Plaintiffs are granted leave to amend to establish

18   that this Court has personal jurisdiction over Defendant Lee.

19

20   [4] Within Plaintiffs' third cause of action in the FAC, Plaintiffs include a paragraph that states the
     following:

21

22           Defendants NK, CMB Export, Hogan, and Lee participated in the
             wrongs personally and/or authorized and/or directed them by, among
             other things, failing to inform Plaintiffs and signing the various loan,

23           security, and intercreditor agreements that memorialized CMB's
             consent to the materially adverse original Loan terms and conditions

24           and their subsequent amendments. Defendant Lee also participated in
             the wrongs by testifying under oath that there was no disclosure to

25           CMB of the Participation Agreement in 2020.

26   (FAC ¶ 161.)  The initial sentence is vague but appears to be a restatement of the earlier allegations
     regarding the email received by Defendant Lee.  The latter sentence is not contained in the factual

27   allegations of the FAC but would also be insufficient to establish personal jurisdiction as the FAC does
     not establish that Defendant Lee's testimony about whether the Participation Agreement was disclosed

28   was directed toward the forum or that Defendant availed himself of the privileges of the forum.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### I.    Legal Standard

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).  However, if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice.  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### II.    Adequacy of Plaintiffs' Claims against Defendants Lee and Hogan

CMB Defendants argue that the FAC fails to allege claims against Defendants Lee and Hogan as individuals.  In their Opposition, Plaintiffs cite specific portions of the FAC that Plaintiffs claim contain allegations that Defendants Lee and Hogan personally participated in the alleged wrongs.  (*See* Opp'n to CMB Mot. at 7 (citing FAC ¶¶ 91, 134–35, 158–60).)  Plaintiffs argue that within these paragraphs, the FAC claims Defendants Lee and Hogan "personally committed malfeasance in neglecting the Term Sheet, failing to obtain a copy of the subsequent Participation Agreement ////

9

1    and misrepresenting their ignorance of the same; and participating in sham lawsuits."

2    (Opp'n to CMB Mot. at 6.)

3          Reviewing the FAC, the factual allegations regarding Defendant Lee concern

4    his receipt of an email dated July 14, 2020.  That email contained the Term Sheet that

5    purportedly disclosed the existence of the Participation Agreement which changed

6    the loan repayment structure to the detriment of Group 48's investment.  Plaintiffs

7    speculate that Defendant Lee may have concealed information from Plaintiffs (or that

8    information was concealed from Lee himself).[5]  (FAC ¶¶ 91, 113-14.)  But the FAC

9    does not allege any additional facts to support this contention.  Rather, based solely

10   on the allegation that Defendant Lee was sent that email, Plaintiffs proposes two

11   theories[6], one which imputes <u>no</u> misconduct to Defendant Lee and the other that

12   suggests "Defendants [Louis Brisbois] and Lee conspired to conceal the terms of the

13   Term Sheet, Third Amended Mezzanine Loan and Fourth Amendment to the

14   Intercreditor Agreement from Plaintiffs . . . ."  (FAC ¶¶ 113–14.)  Plaintiffs provide no

15   support for Defendant Lee's personal involvement in the misconduct or how he

16   allegedly conspired to conceal these documents beyond the mere fact that he was a

17   recipient of the email.  Indeed, by proposing an alternative theory where Lee did

18   nothing wrong, Plaintiffs seemingly acknowledge that the receipt of the email does

19   not, by itself, show any misconduct by Defendant Lee.  This single allegation is

20   insufficient to support any claim against Defendant Lee individually.

21         As to Defendant Hogan, the allegations within the FAC are similarly limited.

22   Beyond conclusory statements made within Plaintiffs' statement of claims, the only

23   allegations related to Hogan concern his communication with the Group 48 limited

24

25   [5] In addition to the allegations concerning the concealment of information, Plaintiffs allege that
     Defendant Lee "participated in the wrongs" by testifying that the Participation Agreement was not
26   disclosed to CMB Defendants in 2020.  (FAC ¶ 161.)  Plaintiffs fail to explain how this testimony is
     actionable.
27

28   [6] Plaintiffs also suggest, with no support, that these are the only two possible series of events based on
     the July 14, 2020 email.

1  partners about the litigation.  (FAC ¶¶ 122–23, 134–35.)  Nothing in these factual

2  allegations establishes malfeasance by Defendant Hogan in his individual capacity.

3  Despite this, Plaintiffs seek to bring various claims against Defendant Hogan that are

4  unsupported by these limited factual allegations.

5        Accordingly, the Court dismisses Plaintiffs' claims against Defendants Lee and

6  Hogan based on the lack of factual allegations supporting those claims.[7]  Leave to

7  amend will be granted as it does not yet appear that amendment is futile.

8      **III.    RICO Claims**

9        Both the CMB Defendants and Defendant Louis Brisbois move to dismiss the

10  Plaintiffs' RICO ("Racketeering Influence and Corrupt Organizations") claims.  In the

11  FAC, Plaintiffs bring two RICO claims within the FAC, one under 18 U.S.C. § 1962(c)

12  and the other under 18 U.S.C. § 1962(d).  (FAC at 23–26.)  All Defendants move to

13  dismiss both RICO claims on largely similar grounds.

14      **A.  Section 1962(c) Claim**

15        Plaintiffs first cause of action is a RICO claim based on 18 U.S.C. § 1962(c).

16  Section 1962(c) provides for claims against parties who conduct an enterprise through

17  a pattern of racketeering activity.  "To state a claim under section 1962(c), a plaintiff

18  must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering

19  activity."  *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc).  Other

20  cases have recognized a fifth element: "[T]he conduct must be . . . the proximate cause

21  of harm to the victim."  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990,

22  997 (9th Cir. 2014).

23      **1.  RICO Enterprise**

24        To state a RICO claim, the plaintiff must first adequately allege the existence of

25  an "association-in-fact" enterprise.  For purposes of RICO, an "enterprise" is ". . . any

26

27    [7] While the Court dismisses all claims against Hogan and Lee, the Court addresses below some of the
dismissed claims against Defendants Lee and Hogan, but only where it might help the parties narrow

28  the issues in this case for amendment and motion practice.

1   individual, partnership, corporation, association, or other legal entity, and any union

2   or group of individuals associated in fact although not a legal entity."  18 U.S.C.

3   § 1961(4).  Satisfying the association-in-fact enterprise element requires that the

4   plaintiff sufficiently plead that the enterprise had "(A) a common purpose, (B) a

5   structure or organization, and (C) longevity necessary to accomplish the purpose."

6   *Eclectic Props. E., LLC*, 751 F.3d at 997.

7              **i.   Common Purpose**

8        To establish a common purpose, a plaintiff must plausibly allege that the

9   members of the enterprise had a common purpose.  Courts disagree on whether

10  conduct must be fraudulent to qualify as a common purpose.  *See Singh v. AutoZone*

11  *Parts, Inc.*, No. 2:23-cv-01379-TLN-CSK, 2024 WL 3673063, at *7 (E.D. Cal. Aug. 5,

12  2024) ("In the Ninth Circuit, the law is unsettled as to whether the common purpose

13  must be fraudulent." (internal citations and quotations omitted)).  Even so, there is

14  agreement that a RICO enterprise cannot be constituted of entities engaged in

15  ordinary commercial activities.  *See Jimenez v. Serv. Emps. Int. Union Local 775*, 590 F.

16  Supp. 3d 1349, 1362 (E.D. Wash. 2022) (collecting cases).

17       Plaintiffs allege that the purported enterprise "operates for a common purpose"

18  though the exact nature of the common purpose is not explicitly stated.  (FAC ¶ 132.)

19  Plaintiffs do allege that the enterprise "engaged in an intentional scheme to defraud

20  Plaintiffs in an effort to cover up its willful and wanton misconduct and/or gross

21  negligence in protecting the Plaintiff's investment." (*Id.*)  This was purportedly done

22  by "fil[ing] and pursu[ing] two meritless lawsuits . . . " and through communications to

23  Plaintiffs in which it was represented that Defendants were unaware of the terms of the

24  Participation Agreement.  (*Id.* ¶ 133–37.)  It thus appears that Plaintiffs claim that the

25  enterprise's common purpose was to conceal misconduct or negligence by

26  Defendants.

27       It is at least possible that Plaintiffs could allege a common purpose on such

28  allegations, though as contained in the FAC currently they are vague.  However, the

RICO enterprise Plaintiffs seek to establish notably includes Defendant Louis Brisbois and is largely based on legal representation provided by Defendant Louis Brisbois. As a law firm, Defendant Louis Brisbois' primary business activity is naturally providing legal representation to clients which includes the filing of lawsuits.  Courts have regularly rejected that plaintiffs can establish the existence of a common purpose based simply on the allegation that the primary business activities of a member of the enterprise were conducted fraudulently.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., and Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202–03 (C.D. Cal. 2011); *see also Maye v. Online Land Sales LLC*, No. 2:23-cv-00173-DAD-CKD, 2024 WL 382294, at *9 (E.D. Cal. 2024).  Moreover, courts have also declined to find the existence of a RICO enterprise based on routine business relationships between two parties.  *See Pac. Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011, 1026–27 (N.D. Cal. 2020) ("Courts routinely hold that the 'common purpose' requirement is not met where, as here, the allegations in the complaint are consistent only with the execution of a routine contract or commercial dealing."); *see also Gomez v. Guthy–Renker, LLC*, No. 14-cv-01425-JGB-KKx, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015) (collecting cases).

As a result, the allegations in the FAC are insufficient to establish the existence of a common purpose.  Even moving beyond the vague nature of the allegations, the enterprise Plaintiffs seek to assert is predicated on the routine business relationship between Defendant Louis Brisbois and Group 48 – their attorney-client relationship – as well as the allegation that Defendant Louis Brisbois' primary business activities – legal representation and litigation – was conducted fraudulently.  For the reasons identified above, these allegations cannot form the basis of a common purpose and thus do not establish the existence of an enterprise for purposes of RICO.

Plaintiffs argue that "there is nothing routine about an attorney and client withholding material information from relevant third parties and making false claims in legal proceedings."  (*See* Opp'n to Louis Brisbois Mot. at 6.)  But this goes to the

1   propriety of how that business relationship was conducted, not whether it was a

2   routine business relationship.  While Plaintiffs may take issue with the adequacy of

3   Defendant Louis Brisbois' legal representation or contend that Defendant Louis

4   Brisbois acted unethically, Plaintiffs' allegations still concern conduct that was within

5   the scope of Defendant Louis Brisbois' primary business activity in connection with

6   Defendant Louis Brisbois' and Group 48's routine business relationship.  That Plaintiffs

7   allege that Defendant Louis Brisbois' filing of the lawsuits was conducted fraudulently,

8   "does not transform it into distinct 'enterprise' conduct actionable under RICO."  *In re*

9   *Juul Labs, Inc., Mktg., Sales Pracs., and Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 599–

10  600 (N.D. Cal. 2020); *see Skye Othobiologics, LLC v. CTKM Biomedical, LLC*, No. 20-

11  cv-3444-DMG-PVCx, 2021 WL 6104163, at *3 (C.D. Cal. Aug. 30, 2021) (finding

12  conduct was not within a routine business relationship where defendants allegedly

13  directed business away from their employer to their new company and made

14  misrepresentations to their employer's clients to induce them to leave exclusivity

15  contracts with their employer).

16          Accordingly, the allegations in the FAC are insufficient to support the existence

17  of an "enterprise" as the allegations do not establish a common purpose outside

18  Defendant Louis Brisbois' primary business activity and a routine business relationship

19  between Defendant Louis Brisbois and the CMB Defendants.[8]  Plaintiff's claim under

20  section 1962(c) must be dismissed as nothing in the FAC suggests Defendant Louis

21  Brisbois was acting beyond their typical role.  Plaintiffs are granted leave to amend to

22  state a claim under section 1962(c), though any amended RICO allegations against

23  Defendant Louis Brisbois must sufficiently allege that they acted outside a routine

24  business relationship and their primary business activity.

---

[8] Given the lack of alleged common purpose, the Court does not address the other pleading requirements for association-in-fact: a structure or organization and longevity necessary to accomplish the purpose.  Any amended complaint that includes further RICO allegations would require substantial changes to the allegations in this regard anyway.  It is sufficient to say at this stage that in further amending the complaint, Plaintiffs must plausibly allege sufficient facts to meet the requirements to establish an association-in-fact enterprise.

1               **ii.  Group 48 as an Enterprise**

2        In the FAC, Plaintiffs also suggest that "[Group 48] itself constitutes an

3 'enterprise' engaged in, and whose activities affect, interstate commerce within the

4 meaning of [RICO]."  (FAC ¶ 140.)  Plaintiffs do not dedicate any further allegations

5 within the FAC on this point, but the Court pauses here to note that it is unclear how

6 Plaintiffs believe that Group 48 itself can constitute an enterprise within the meaning

7 of RICO.  The Supreme Court has affirmed the basic principle that "to establish liability

8 under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a

9 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a

10 different name."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  It

11 is unclear how Plaintiffs' allegation that Group 48 is itself a RICO enterprise can satisfy

12 this "distinctiveness" principle.  Given the lack of any other factual allegations

13 concerning Group 48 as an enterprise, the Court need not go further in addressing

14 this issue.  Plaintiffs have alleged insufficient facts to establish Group 48 as an

15 enterprise for purposes of section 1962(c).

16            **2.  Pattern of Racketeering Activity[9]**

17        Defendants also contend that Plaintiffs have not adequately alleged a pattern of

18 racketeering activity as the allegations do not sufficiently satisfy the particularity

19 requirement for fraud allegations and because "litigation activity alone does not give

20 rise to a civil RICO claim."  (Louis Brisbois Mot. at 12–13; *see* CMB Mot. at 17–19.)

21 Alleging that an enterprise was engaged in a pattern of racketeering activity requires

22 that a plaintiff adequately allege that the enterprise engaged in the predicate acts

23 defined by the RICO Statute (the "racketeering activity") on at least two occasions (the

24 "pattern").  *Comm. to Protect our Agric. Water v. Occidental Oil and Gas Corp.*, 235 F.

25 Supp. 3d 1132, 1177 (E.D. Cal. 2017) ("To plead a pattern of racketeering activity,

26

27   [9] While in light of the failure to establish the existence of an "enterprise" for purposes of RICO the Court
28   need not address the other arguments against Plaintiffs' RICO claims, the Court does so to provide
some clarity for future amended complaints and motion practice.

1  plaintiffs must allege that defendants committed at least two of the statutorily

2  enumerated predicate acts.")  A plaintiff must also plausibly allege facts that establish

3  violations of the identified underlying predicate acts.  *See Eclectic Properties E.*, 751

4  F.3d at 997.

5         Plaintiffs allege a pattern of racketeering activity based on a claim that the

6  enterprise engaged in predicate acts of "multiple and continuous acts of mail and wire

7  fraud[.]"  (FAC ¶ 141.)  Establishing a violation of the wire or mail fraud statute requires

8  that Plaintiffs show that "(1) the defendants formed a scheme or artifice to defraud; (2)

9  the defendants used the United States [wires or] mails or caused a use of the United

10  States [wires or] mails in furtherance of the scheme; and (3) the defendants did so with

11  the specific intent to deceive or defraud."  *Schreiber Distrib. Co. v. Serv-Well Furniture*

12  *Co.*, 806 F.2d 1393, 1399–1400 (9th Cir. 1986).  The scheme to defraud must involve

13  an affirmative, material misrepresentation.  *See In re Juul Labs, Inc.*, 497 F. Supp. 3d at

14  595.

15        The disagreement as to whether the particularity requirement is satisfied

16  appears largely an issue of clarity in drafting.  Plaintiffs' FAC is extremely clear on the

17  "who, what, when, where, and how" of the misconduct they allege; the FAC provides

18  clear details about when, where, and how various Defendants allegedly made

19  misleading and fraudulent statements, filed the frivolous lawsuits, or took other

20  wrongful acts.  However, the FAC is less clear in establishing how each element of mail

21  or wire fraud was satisfied on at least two occasions.  This leaves Defendants (and the

22  Court) in the challenging position of attempting to discern precisely what acts

23  Plaintiffs allege constitute wire or mail fraud, how each element is satisfied, and thus

24  whether these acts constitute racketeering activity.  In this way, while Plaintiffs' factual

25  allegations are clear, the FAC still lacks sufficient clarity to advise Defendants of the

26  specific nature of the claims against them such that they can prepare an informed

27  defense.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

28  ////

1    Accordingly, CMB Defendants and Defendant Louis Brisbois' Motions to Dismiss

2    Plaintiffs' section 1962(c) claims are also granted on this basis.

3         The Court is less convinced by Defendants' contention that Plaintiffs cannot

4    establish racketeering activity based on "litigation activities" by Defendants.  Many of

5    the cases cited by Defendants hold that the filing of allegedly frivolous actions <u>against</u>

6    a plaintiff did not constitute racketeering activity.  *See, e.g.*, *Kim v. Kimm*, 884 F.3d 98,

7    104–05 (2d Cir. 2018) (finding a defendant to a single frivolous lawsuit could not state

8    a RICO claim based on the litigation activity); *Snow Ingredients, Inc. v. SnoWizard, Inc.*,

9    833 F.3d 512, 525 (5th Cir. 2016) (holding that sham litigation was not a predicate act

10   for purposes of RICO); *Deck v. Engineered Laminates*, 349 F.3d 1253, 1258 (10th Cir.

11   2003) (holding that "abusive litigation" could not be considered a form of extortion

12   against defendants as this would result in unsuccessful lawsuits creating colorable

13   extortion and RICO claims).  The policy concerns underlying this rule include the risk

14   of a former defendant filing RICO actions in retaliation for litigation, re-litigation of

15   issues already determined in a prior action, and the chilling effect on access to open

16   courts if litigants could subject themselves to RICO liability by simply filing cases.  *See*

17   *Kim*, 884 F.3d at 104; *see also Deck*, 349 F.3d at 1258.  None of these concerns are

18   implicated – or are at least substantially reduced – when the RICO claims are brought

19   not by a defendant to the prior litigation, but by individuals whose interests were

20   theoretically represented by the plaintiffs filing the earlier litigation.[10]  The Court does

21   not, at this stage, reach any final determination on this issue, but simply notes that it is

22   unclear from the cases cited by Defendants that the "litigation activities" rule applies in

23   this instance.  Should Plaintiffs continue to pursue RICO allegations in filing an

24   amended complaint, Defendants are not precluded from reasserting this basis for

25   ////

26

27   _____

     [10] The Court also notes that while Plaintiffs' claims are certainly focused on the litigation, that does not

28   appear to be the sole basis for the claims.  Given the lack of clarity about the precise predicate offenses
     Plaintiffs allege though, it is impossible to make any determination on this basis.

1    dismissal.  But should they do so, Defendants should address why this rule should

2    apply here when it is typically utilized to prevent retaliatory RICO claims.

3          **3. Causation**

4          Given that Plaintiffs have not clearly alleged the predicate acts on which the

5    RICO claims are based, the Court cannot determine whether Defendants are correct

6    that Plaintiffs have failed to adequately allege that Defendants' acts were the

7    proximate cause of any harm suffered by Plaintiffs.  Moreover, while the FAC appears

8    to generally allege that Plaintiffs suffered harm from the loss of Plaintiffs' investments

9    (*see* FAC ¶ 32 ("Defendants must be held liable for their wrongful conduct which

10   foreseeably injured innocent victims to the tune of over $96.3 million.")), Plaintiffs'

11   RICO allegations appear more focused on the costs incurred in filing the New York

12   and California lawsuits (*see* FAC ¶¶ 142–43).  Similarly, Plaintiffs' Opposition to

13   Defendant Louis Brisbois' Motion notes the partnership assets spent on the litigation.

14   (Opp'n to Louis Brisbois Mot. at 11–12.)  The nature of the injury alleged for Plaintiffs'

15   RICO claims impacts the analysis of whether Plaintiffs can satisfactorily allege that

16   Defendants' actions were the proximate actual cause of those harms.  Should Plaintiffs

17   choose to pursue RICO claims in an amended complaint, Plaintiffs must be clear as to

18   the causal link between the RICO violations and the harm alleged.

19         **B. Section 1962(d) Conspiracy Claim**

20         The second cause of action in the FAC is an alleged violation of 18 U.S.C.

21   § 1962(d), conspiracy to violate subsection (c) of section 1962.  (FAC at 30.)

22   Subsection (d) of section 1962 states, "[i]t shall be unlawful for any person to conspire

23   to violate any of the provisions of subsection (a), (b), or (c) of this section."  Thus, to

24   state a claim for violation of subsection (d), a plaintiff must also adequately allege "a

25   substantive violation of RICO or that the defendants agreed to commit, or participated

26   in, a violation of two predicate offenses."  *Howard v. Am. Online Inc.*, 208 F.3d 741,

27   751 (9th Cir. 2000).  "Plaintiffs cannot claim that a conspiracy to violate RICO existed if

28   they do not adequately plead a substantive violation of RICO."  *Id.*

1    As stated above, Plaintiffs have failed to adequately allege a violation of section

2    1962(c).  As such, Plaintiffs' claim under subsection (d), which is predicated on the

3    violation of subsection (c), must also be dismissed as it also fails as a matter of law.  *Id.*

### IV.    State Law Claims

#### A.  Applicable Law

6    As an initial matter, CMB Defendants and Plaintiffs disagree over whether

7    Delaware or California law properly applies to this action.  "In a federal question action

8    where the federal court is exercising supplemental jurisdiction over state claims, the

9    federal court applies the choice-of-law rules of the forum state—in this case,

10    California."  *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1164 (9th Cir.

11    1996).  California employs different choice of law tests depending on whether there is

12    a contractual choice of law provision that applies to the claims.  The *Nedlloyd* test

13    applies when there is a contractual choice of law and the claim falls within the scope of

14    that agreement, whereas the "governmental interest" test applies where there is no

15    choice of law provision encompassing the claim, but one party asserts a different

16    state's law is nevertheless applicable.  *Wash. Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th

17    906, 919 (2001).

18    Under the governmental interest test, first, the court must determine whether

19    the foreign law "materially differs" from the forum law; next the court must determine

20    whether the foreign state has an interest in applying its law; and finally, only if the first

21    two steps are satisfied, the court must "select the law of the state whose interests

22    would be 'more impaired' if its law were not applied."  *Id.* at 920.  By comparison,

23    where a claim falls within a choice of law provision, the court applies the *Nedlloyd*

24    approach which adopts the view of the Second Restatement of Conflict of Laws

25    § 187(2).  *Id.* at 916.  Under that measure, "the court must first determine: (1) whether

26    the chosen state has a substantial relationship to the parties or their transaction, or (2)

27    whether there is any other reasonable basis for the parties' choice of law."  *Id.*

28    (cleaned up).  If either of these tests are met, "the court must next determine whether

1   the chosen state's law is contrary to a *fundamental* policy of California.  If there is no

2   such conflict, the court shall enforce the parties' choice of law.  If, however, there is a

3   fundamental conflict with California law, the court must then determine whether

4   California has a materially greater interest than the chosen state in the determination

5   of the particular issue." *Id.* (cleaned up).

6          Here, there is a contractual choice of law provision contained within the Limited

7   Partnership Agreement ("LPA") which requires that "laws of the State of Delaware now

8   or hereafter in effect, . . . shall be used to construe and govern this Agreement. " (LPA

9   (FAC, Ex. 1) at 3.)  However, simply because there is a choice of law provision within

10  the LPA does not mean that it covers each claim.  While both Plaintiffs and CMB

11  Defendants seem to argue for the universal application of California or Delaware state

12  law to the entire FAC, the appropriate law to apply must be determined claim-by-

13  claim both based on whether the LPA (and thus the LPA's choice of law provision)

14  applies to that claim and which state's law applies to the specific cause of action at

15  issue.[11]  *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001) ("the

16  three-part California choice of law inquiry requires comparison of each non-forum

17  state's law and interest with California's law and interest *separately*." (citations

18  omitted)).

19          **B.  State Law Claims against Defendant Louis Brisbois**

20          Plaintiffs have alleged several state law claims against Defendant Louis

21  Brisbois.[12]  These include Plaintiffs' cause of action for aiding and abetting breach of

22  fiduciary duties, civil conspiracy, legal malpractice, and claims under the UCL.

23  ////

---

[11] Defendant Louis Brisbois does not raise concerns about which state's law applies in their Motion to
Dismiss and, like Plaintiffs, utilizes California law.  In instances where the applicable state law is
uncontested, the Court applies the state law that both parties agree applies.

[12] Plaintiffs' state law claims against Defendant Louis Brisbois include claims exclusively against
Defendant Louis Brisbois and claims that involve both CMB Defendants and Defendant Louis Brisbois.
The Court only addresses the portion of any claim as it relates to Defendant Louis Brisbois in this
section.

1  Defendant Louis Brisbois and Plaintiffs agree that Plaintiffs' claims against Defendant

2  Louis Brisbois are subject to California law.

3                **1. Agent's Immunity Rule**

4         As to Plaintiffs' aiding and abetting breach of fiduciary duty and civil conspiracy

5  claims, Defendant Louis Brisbois seeks to invoke California's "Agent's Immunity Rule"

6  as barring these claims.  "The Agent's Immunity Rule shields an attorney who merely

7  acted as an agent or employee of a third party when the third party had a duty to the

8  plaintiff." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1037 (9th Cir. 2016).  The

9  two significant limitations on this rule are that it does not prevent claims against "[1] an

10  attorney who had an independent legal duty to the plaintiff, or [2] an attorney who

11  went beyond a professional duty as part of a conspiracy for the attorney's financial

12  gain." *Id.*  Plaintiffs argue that their claims against Defendant Louis Brisbois fall into

13  the first limitation of the Agent's Immunity Ruled based on duties Defendant Louis

14  Brisbois owed them under two related but distinct theories: (1) Defendant Louis

15  Brisbois' representation of the limited partnership was intended to be for Plaintiffs'

16  benefit and (2) Defendant Louis Brisbois provided advice to the general partners of

17  the limited partnership who owed Plaintiffs a fiduciary duty.

18                **i.  *Goodman* Theory of Duty**

19         Plaintiffs first argue that Defendant Louis Brisbois' legal activities were

20  committed for the benefit of the limited partner EB-5 investors (and thus Plaintiffs).

21  Plaintiffs contend that the purpose of the limited partnership was to obtain residency

22  for the limited partners and that Defendant Louis Brisbois thus owed an independent

23  duty to Plaintiffs.  Plaintiffs rely on two cases for this proposed imposition of duty:

24  *Goodman v. Kennedy*, 18 Cal. 3d 335 (1976) and *Johnson v. Superior Ct.*, 38 Cal. App.

25  4th 463, 471 (1995).

26         In *Goodman*, the California Supreme Court considered whether an attorney

27  could be liable to a third-party purchaser of securities based on the negligent advice

28  he provided to his client regarding the registration of those securities.  The *Goodman*

1  court balanced a list of factors to determine whether the attorney was in privity with

2  the third party.  *Goodman*, 18 Cal. 3d at 343 (citing *Lucas v. Hamm*, 56 Cal. 2d 583

3  (1961) and *Biakanja v. Irving*, 49 Cal. 2d 647 (1958)).  The factors considered by courts

4  in applying *Goodman* include "(1) the extent to which the transaction was intended to

5  affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of

6  certainty that plaintiff suffered injury; (4) the closeness of the connection between the

7  defendant's conduct and the injury suffered; (5) the moral blame attached to the

8  defendant's conduct; (6) the policy of preventing future harm; (7) the likelihood that

9  imposition of liability might interfere with the attorney's ethical duties to the client;

10  and (8) the likelihood that such liability would impose an undue burden on the legal

11  profession."  *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th

12  802, 832 (2005).  The *Goodman* court ultimately determined that the attorney had no

13  duty to the purchaser "because his retention by the corporate client was not for the

14  purpose of benefiting the plaintiff."  *Johnson*, 38 Cal. App. 4th at 471 (discussing

15  *Goodman*).

16         In *Johnson*, the California Court of Appeals, Fourth District, considered claims

17  brought by the limited partners to a limited partnership against a law firm based on

18  legal advice rendered to the general partner to assist in "swindling" the limited

19  partners.  *Id.* at 467.  The appellate court in *Johnson* found the *Goodman* factors did

20  not support imposing a duty as the firm's advice was not intended to benefit the

21  limited partners.  *Id.* at 472.

22         A review of *Goodman* and *Johnson* strongly advises against imposing on

23  Defendant Louis Brisbois a duty to Plaintiffs.  Plaintiffs argue that because "Plaintiffs

24  entered into a Limited Partnership with CMB for the sole purpose of obtaining U.S.

25  residency through the Federal EB-5 Immigration Program[,]" Defendant Louis Brisbois

26  was necessarily retained for Plaintiffs' benefit.  However, Plaintiffs' argument

27  improperly broadens the scope of the *Goodman* theory of liability.  *Goodman*

28  supports imposing a duty (and thus liability) on agents where ". . . the purpose of

1    retention of the attorney was for <u>the specific objective</u> of creating such benefit . . ." for

2    the third party. *Johnson*, 38 Cal. App. 4th at 471 (emphasis added). This is used to

3    establish the existence of a duty to a third party where, for instance, an attorney is

4    retained to create a will for a client for the express benefit of a third party. *See Lucas*

5    *v. Hamm*, 56 Cal. 2d 583 (1961). The *Goodman* theory does not impose a duty based

6    on secondary effects or objectives. As stated by the court in *Johnson*, *Goodman*

7    applies where "[the] imposition of the duty carries out the <u>prime purpose</u> of the

8    contract for services." *Johnson*, 38 Cal. App. 4th at 472 (emphasis added).

9        Here, the prime purpose of Defendant Louis Brisbois' retention was not to assist

10   Plaintiffs in obtaining EB-5 visas or ensure they could continue to reside in the United

11   States. Undoubtedly, the limited partners were solicited to join the limited

12   partnership with the promise of an EB-5 visa to entice them to invest. It is also clear

13   that this was the Plaintiffs' primary objective in investing and that the limited

14   partnership did facilitate Plaintiffs obtaining EB-5 visas. But the specific objective of

15   Group 48 was not to provide the limited partners with visas but to obtain and invest

16   the partnership's funds, and Defendant Louis Brisbois was retained to assist the

17   partnership to this end. More importantly, Plaintiffs have also not plausibly alleged

18   that the specific objective in retaining Defendant Louis Brisbois was to create a benefit

19   for Plaintiffs. For example, there is no allegation that Defendant Louis Brisbois

20   advised Plaintiffs on the requirements contained in the Intercreditor Agreement

21   discussed in Plaintiffs' Opposition (Opp'n to Louis Brisbois Mot. at 15). Defendant

22   Louis Brisbois is also not alleged to have provided any immigration services or advice

23   to Plaintiffs. Instead, the representation was instead for the benefit of the limited

24   partnership as a whole. Defendant Louis Brisbois was not retained with the specific

25   objective of creating a benefit for Plaintiffs and the prime purpose of Defendant Louis

26   Brisbois' representation was not to obtain EB-5 visas for Plaintiffs.

27        This alone is likely sufficient to establish that Defendant Louis Brisbois did not

28   owe a duty under a *Goodman* theory as later courts have repeatedly recognized that

23

1  "[t]he predominant inquiry . . . is whether the principal purpose of the attorney's

2  retention is to provide legal services for the benefit of the plaintiff." *Goldberg v. Frye*,

3  217 Cal. App. 3d 1258, 1268 (1990); *see Johnson*, 38 Cal. App. 4th at 471–42.

4  However, consideration of the other *Goodman* factors also supports this conclusion.[13]

5  It was foreseeable that if the limited partnership failed Plaintiffs might be unable to

6  maintain their EB-5 visa status.  With that said, it was also not certain that the limited

7  partners were unable to maintain their residency because of the failure of the

8  investment.  Defendant Louis Brisbois' representation is of middling closeness to this

9  injury; while the Project was the basis for the limited partners' EB-5 visas, Defendant

10  Louis Brisbois' representation is not directly connected to the limited partners'

11  immigration.  Under Plaintiffs' allegations of fraudulent behavior, some moral blame is

12  attached to Defendant Louis Brisbois' conduct, though not to the initial

13  representation.

14       The final three policy-based factors weigh against the imposition of a duty.

15  Defendant Louis Brisbois had existing attorney-client responsibilities to the limited

16  partnership while the limited partners had a contractual relationship to the general

17  partners and the limited partnership.  The policy of preventing future harm is not

18  impeded by not finding a duty between Plaintiffs and Defendant Louis Brisbois as

19  Plaintiffs are still able to seek recovery from the parties that owed them a duty.

20  Imposition of duty might also interfere with ethical duties and impose an undue

21  burden.  It is not uncommon that the individual interests of limited partners conflict

22  with the interests of the limited partnership an attorney represents.  Imposing a duty

23  on those attorneys would create situations where attorneys are presented with

24

25  [13] As stated above, these factors are: "(1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that plaintiff suffered

26  injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; (6) the policy of preventing future harm; (7) the

27  likelihood that imposition of liability might interfere with the attorney's ethical duties to the client; and (8) the likelihood that such liability would impose an undue burden on the legal profession." *Berg &*

28  *Berg Enterprises*, 131 Cal. App. 4th at 832.

24

1    conflicting ethical duties.  Moreover, many limited partnerships, including those

2    connected to EB-5 investments, have numerous limited partners.  The imposition of a

3    duty would be an undue burden for the legal profession as it would create an

4    unmanageable situation where attorneys would owe duties to each limited partner in

5    connection with their immigration status which may involve distinct and potentially

6    conflicting interests particular to each limited partner.

7    　　　The Court need not determine the exact weighting of these factors.  It is

8    sufficient at this stage to only say that they do not weigh in favor of imposing a duty so

9    as to outweigh the first factor – that the principal purpose of Defendant Louis Brisbois'

10   representation was not for the benefit of Plaintiffs – which is the predominant inquiry.

11   *Goldberg*, 217 Cal. App. 3d at 1268.  As a result, Plaintiffs have not established that

12   Defendant Louis Brisbois owed a duty to Plaintiffs under a *Goodman* theory.

13   　　　　　**ii.  Duty Based on Fiduciary Representation**

14   　　　Plaintiffs secondarily argue that Defendant Louis Brisbois owed a duty to

15   Plaintiffs based on Defendant Louis Brisbois' advice to the general partners on how to

16   discharge the general partners' fiduciary duties to the limited partners.  (Opp'n at 16.)

17   Plaintiffs' argument is expressly and exclusively based on the reasoning of *Johnson*.

18   　　　After discussing (and ultimately rejecting) the imposition of a duty on a

19   *Goodman* theory where an attorney-defendant owes a duty to a third party when the

20   primary purpose of the attorney-defendant's representation is to create a benefit for

21   the third party, the *Johnson* court considered whether an attorney-defendant might

22   have a duty based on advice he provided to a general partner who themselves had a

23   duty to the limited partners.  *Johnson*, 38 Cal. App. 4th at 472–74.  Put another way,

24   the *Goodman* theory of duty focuses on whether the purpose of the representation

25   was to benefit a third party, while the second fiduciary representation theory

26   considered by *Johnson* concerns whether a fiduciary's duty to a third party flows

27   through the fiduciary so that the fiduciary's counsel owes a duty to the third party as

28   well.  The main case *Johnson* considered on this point was *Morales v. Field, DeGoff*,

25

1   *Huppert & MacGowan*, 99 Cal. App. 3d 307 (1979).  In *Morales*, the court found that in

2   providing advice to a trustee, an attorney also assumed a relationship with the

3   beneficiary of the trust "akin to that between trustee and beneficiary."  *Id.* at 316.

4        However, as noted by the *Johnson* decision cited by Plaintiff, "[t]he authorities

5   since [*Morales*], while not directly taking exception to the rule of the case, appear to

6   have held uniformly that the legal representation of a fiduciary, standing alone, does

7   not impose upon the attorney a fiduciary obligation to the beneficiary."  *Johnson*, 38

8   Cal. App. 4th at 473.  The *Johnson* court specifically noted additional facts in *Morales*

9   that were "suggestive of creation of a fiduciary duty" including that the attorney had

10   communicated with the beneficiary and told him "we will keep you advised if anything

11   unusual arises" and "you should feel reasonably assured that your interests will be

12   protected."  *Id.*

13        Here, Plaintiffs have only alleged facts that might establish that Defendant Louis

14   Brisbois provided representation to the limited partnership and possibly the general

15   partners.  Plaintiffs have not provided any additional factual allegations that would

16   justify creating a legal duty for Defendant Louis Brisbois via the general partners' duty

17   to the limited partners.  There is no indication that Defendant Louis Brisbois ever

18   communicated with Plaintiffs let alone made any promises about future

19   communications or that Plaintiffs' interests would be protected.  The present facts thus

20   do not support the application of a duty based on fiduciary representation as

21   described in *Johnson*.

22                                  * * * *

23        Accordingly, the Court finds that the Agent's Immunity Rule applies.  Plaintiffs'

24   aiding and abetting breach of fiduciary duty and civil conspiracy claims against

25   Defendant Louis Brisbois are thus barred by the Agent's Immunity Rule as Plaintiffs

26   seek to impose liability on Defendant Louis Brisbois based on their representation of

27   Group 48.  As it may yet be possible for Plaintiff to adequately allege Defendant Louis

28   ////

1  Brisbois owed a duty to Plaintiffs, Plaintiffs' aiding and abetting and civil conspiracy

2  claims against Louis Brisbois are dismissed with leave to amend.

3        **2. Legal Malpractice**

4        Plaintiffs' legal malpractice claim against Defendant Louis Brisbois fails on a

5  similar basis.  The elements of a legal malpractice claim in California are: "(1) the duty

6  of the attorney to use such skill, prudence, and diligence as members of his or her

7  profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate

8  causal connection between the breach and the resulting injury; and (4) actual loss or

9  damage resulting from the attorney's negligence." *Wilkinson v. Zelen*, 167 Cal. App.

10  4th 37, 45 (2008).  The question of whether a duty exists is the same one discussed

11  above in *Goodman*.  *See Osornio v. Weingarten*, 124 Cal. App. 4th 304, 319–20 (2004)

12  (citing *Goodman*, 18 Cal. 3d 342 in discussing the duty element of a legal malpractice

13  claim).  Thus, Plaintiffs' legal malpractice claim is also deficient as Plaintiffs have not

14  established that Defendant Louis Brisbois owed the Plaintiffs a duty.  For this reason,

15  Plaintiff's legal malpractice claim is dismissed with leave to amend.

16        **3. UCL Claim**

17        The Court discusses the viability of the UCL claims against Defendant Louis

18  Brisbois further below.  (*See infra* Motion to Dismiss for Failure to State a Claim section

19  IV.I.3.)

20        **C. Breach of Fiduciary Duty as to CMB Defendants**

21        **1. Delaware Law Applies**

22        Delaware law properly controls Plaintiffs' breach of fiduciary claims under the

23  terms of the LPA.  The alleged breach of fiduciary duties of parties to the LPA plainly

24  falls within the scope of the LPA as it covers liability for breach of fiduciary duty.  Thus,

25  the LPA's choice of law provision applies, and the Court applies the *Nedlloyd* analysis.

26  The parties have good reason to select Delaware law; the parties are reasonably

27  connected to Delaware given Group 48 is a Delaware limited partnership.  Applying

28  Delaware law on breach of fiduciary duty also does not violate California's

1    fundamental policy interests.  *See Kaul v. Mentor Graphics Corp.*, 730 Fed. Appx. 437,

2    439 (2018) ("The choice of Delaware law also does not violate a fundamental

3    California public policy, even though Delaware law would not allow Plaintiffs' fiduciary

4    duty claim.")  Thus, Delaware law applies as this claim is within the scope of the LPA's

5    choice of law provision, the parties have a reasonable basis to select Delaware law,

6    and Delaware law on breach of contract does not violate California's fundamental

7    policy interests.

8        **2.  The LPA Does Not Bar Plaintiffs' Breach of Fiduciary Duty Claims as**

9            **Alleged**

10            Plaintiffs claim that CMB Defendants breached their fiduciary duties in several

11    ways centered around CMB Defendants alleged failures in negotiating the original

12    terms of Group 48's investment in the Project as well as in investigating and

13    responding to the Participation Agreement and the Reuben Brothers' prospective

14    investment.  Under Delaware law, limited partnership agreements may disclaim

15    "virtually all duties" except for the covenant of good faith and fair dealing.  *Cohn v.*

16    *SunCoke Energy Partners, L.P.*, No. 20-3069, 2021 WL 3877885, *4 (3rd Cir. Aug. 31,

17    2021) (citing *Brinckerhoff v. Enbridge Energy Co.*, 159 A.3d 242, 252 (Del. 2017), *as*

18    *revised* (Mar. 28, 2017)).  The LPA in the present action disclaims all liability for the

19    general partner "to the fullest extent under Applicable Law" and expressly includes

20    "any breach of duties (including fiduciary duties)[.]"  (LPA at 50.)  As such, the LPA

21    effectively bars any general fiduciary duty claims against the general partner.

22            However, Plaintiffs are correct that the LPA disclaims liability "unless the loss or

23    damage shall have been the result of the General Partner's material breach of this

24    Agreement causing a Material Adverse Effect to the Partnership, gross negligence, or

25    willful or wanton misconduct."  (LPA at 30.)  In the FAC, Plaintiffs allege that the CMB

26    Defendants were either "grossly negligent or intentionally breached their fiduciary

27    duties" to Plaintiffs.  (FAC ¶ 143.)  Plaintiffs subsequently list a number of actions

28    ////

1    Defendants allegedly failed to take along with an allegation that "Defendants

2    concealed said inaction from Plaintiffs to prevent them from taking action . . . ." (*Id.*)

3    Taken as true, these allegations appear sufficient to place Plaintiffs' allegations

4    within the exception to the disclaimer of liability provided by the LPA.  Accordingly,

5    CMB Defendants' Motion to Dismiss is denied as to CMB Defendants' argument that

6    Plaintiffs' breach of fiduciary duty claim is barred by the LPA.

7    **3. It is Unclear if Portions of Plaintiffs' Breach of Fiduciary Duty Claim**

8    **May be Barred as Untimely**

9    Under Delaware law, fiduciary duty claims are subject to a three-year statute of

10   limitations. *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 184 (D. Del. 2000).  Such claims

11   accrue "at the time of the occurrence of the wrongful act" meaning that the statute of

12   limitations begins to run from that date. *Ontario Hydrov. Zallea Systems, Inc.*, 569 F.

13   Supp. 1261, 1268 (D. Del. 1983).  However, fraud or concealment of the occurrence

14   can toll the running of the limitations period. *Isaacson, Stolper & Co. v. Artisans' Sav.*

15   *Bank*, 330 A.2d 130, 132 (Del. 1974).

16   As mentioned above, Plaintiffs' breach of fiduciary duty claim involves a list of

17   alleged breaches.  The FAC presently does not allege when each of these breaches

18   occurred, and some breaches appear to extend as far back as the original investment

19   in the Project. (*see, e.g.*, FAC ¶ 160 ("Defendants . . . breached their fiduciary duties to

20   Plaintiffs by failing to . . . include a right of first refusal provision in any of the parties'

21   agreements[.]").)  Plaintiffs have alleged that some CMB Defendants engaged in

22   concealment of tortious conduct.  However, the first act of concealment alleged in the

23   FAC involves the receipt of the term sheet "[o]n or about July 14, 2020." (FAC ¶ 91.)

24   No early act of concealment is presently alleged.  Thus, while this concealment tolls

25   the limitation period for some of the alleged breaches of duty (*i.e.,* those concerning

26   Defendants' alleged failure to investigate the Participation Agreement and defend

27   against the terms of the Participation Agreement), the Court cannot determine

28   whether this applies to the other alleged breaches.

A plaintiff must allege facts that support that a complaint is timely filed.  *See Chestra v. Davis*, 747 Fed. Appx. 626, 627 (9th Cir. 2019) (citing *Gregg*, 870 F.3d at 887).  Accordingly, Plaintiffs' breach of fiduciary duty claims that do not concern investigating or "defending" against the Participation Agreement (FAC ¶ 160 subdivisions (ii) and (iii)) are dismissed with leave to amend based on the failure to allege facts to establish these claims are timely.

### D. Intentional/Negligent Misrepresentation as to CMB Defendants

#### 1. Statute of Limitations for Inducement Claims

CMB Defendants correctly contend that as pled, Plaintiffs' claim that CMB Defendants misrepresented the credit status of banking provider First Midwest Bank to induce Plaintiffs' investment is barred as untimely.  (*See* FAC ¶¶ 203.a, 217.a.)  Regardless of whether California or Delaware law applies, these claims are subject to, at most, a three-year statute of limitations.  *Lincoln Nat. Life Ins. v. Snyder*, 722 F. Supp. 2d 546, 562 (D. Del. 2010); *Fanucci v. Allstate Ins.*, 638 F. Supp. 2d 1125, 1133 (N.D. Cal. 2009) (stating that negligent misrepresentation is subject to either a two or three-year statute of limitations depending on whether the claim is based on fraud).  In California, claims accrue at the time of injury while in Delaware, claims accrue at the time of occurrence.  No matter which rule applies, Plaintiff's claims based on the representation of First Midwest Bank's credit would be untimely as it occurred before the execution of the LPA between the general partners and the limited partners on March 28, 2015, at least 8 years prior to the filing of the present action.  (FAC ¶ 62.)  The FAC also lacks any allegations supporting delayed accrual under California's discovery rule or concealment which might delay accrual under Delaware law.  Accordingly, as pled, Plaintiff's claim regarding representations of First Midwest Bank's credit status is untimely.  This portion of Plaintiff's fraudulent and negligent misrepresentation claims will be dismissed with leave to amend.

////

////

1          **2. Delaware Law Applies**

2          Plaintiffs' remaining intentional and negligent misrepresentation claims allege

3    that Defendants failed to disclose the July 14, 2022, email containing the Term Sheet

4    that preceded the Participation Agreement, that the borrower of Group 48's loan and

5    the party responsible for developing the Project was in default, and that "Defendants

6    had no good faith basis for commencing [the New York and California] legal

7    proceedings . . . ." (FAC ¶¶ 203, 217.) These claims thus involve post-investment

8    actions.[14] (*See* FAC ¶¶ 203.b-d, 217.b-d.) As such, they are within the scope of the

9    LPA and its choice of law provision as the LPA provides limitations on liability of the

10   general partners for acts taken within the scope of the partnership business. The

11   parties have provided no indication that Delaware law is contrary to a fundamental

12   policy of California with regard to misrepresentation claims.

13          **3. Adequacy of Claims**

14          Under Delaware law, viable intentional and negligent misrepresentation claims

15   require that the plaintiff acted or refrained from acting in reliance on the

16   misrepresentation of the defendant and suffered injury as a result. CMB Defendants

17   contend that the FAC only alleges that Plaintiffs acted in reliance by not selling their

18   partnership interest and were injured because that interest was rendered worthless.

19   But, CMB Defendants argue, Plaintiffs were <u>unable</u> to sell their interest as the LPA

20   does not permit sale until certain conditions are met. (CMB Mot. at 33–34.) This

21   includes that the limited partner gained unconditional Lawful Permanent Resident

22   status which Defendants argue "Plaintiffs do not and cannot plead" in the FAC. (*Id.* at

23   34.)

24          Defendants' argument relies on evidence that has not been presented and that

25   the Court cannot consider at this time, and must be rejected. At the pleading stage,

26

27   ───────────────
     [14] Given the Court's dismissal of claims against Defendants Lee and Hogan on other grounds, (*see*
     *supra* Motion to Dismiss for Failure to State a Claim section II), the Court here only addresses these
28   claims as they relate to Group 48, CMB Export, and NK.

1    the Court must take as true Plaintiffs' allegation that they refrained from acting in

2    reliance on Defendants' alleged misrepresentations without considering evidence

3    outside the FAC or those documents incorporated within it.  CMB Defendants'

4    argument that Plaintiffs were unable to sell their interest in the LPA is a defense

5    predicated on evidence beyond the FAC.  CMB Defendants may ultimately prove that

6    Plaintiffs were unable to sell their shares as they had not gained unconditional Lawful

7    Permanent Resident status[15] or satisfied the other conditions for transfer under the

8    LPA.  But CMB Defendants have not presented evidence of this, and in any event, such

9    evidence would be improper to consider at this time.

10            Given the above, the Court denies CMB Defendants' Motion to Dismiss

11    Plaintiffs' remaining negligent and intentional misrepresentation claims.

12        **E.  Breach of Contract as to CMB Defendants**

13            **1.  Delaware Law Applies**

14            Plaintiffs' breach of contract concerns CMB Defendants' alleged failure to notify

15    Plaintiffs that the Project was in default and raise the capital necessary to purchase the

16    higher priority loan.  This claim naturally falls within the scope of the LPA and its

17    choice of law provision as it concerns breach of the LPA and, as discussed, the parties

18    have good reason to apply Delaware law as that is the state of incorporation.  Plaintiffs

19

20    [15] CMB Defendants appear to suggest that it was legally impossible that Plaintiffs had obtained unconditional lawful resident status, stating "[r]emoval of conditions on the Limited Partner's permanent residence status is the final step in the EB-5 process" and citing *Kalinowsky v. Mayorkas*, No. 22-cv-07209-VKD, 2023 WL 6165708, at *1 (N.D. Cal. Sept. 20, 2023).  Discussing the designation of an individual as an unconditional Lawful Permanent Resident under 8 U.S.C. § 1186b(c), *Kalinowsky* states that "[a]fter two years [on conditional status], [an EB-5] investor may petition for removal of the conditions and obtain full lawful permanent resident status by demonstrating that their investment meets the program's requirements."  *Id.*  It is not immediately apparent to the Court why, under these rules and the facts alleged in the FAC, it would be legally impossible for a limited partner to have achieved unconditional lawful permanent resident status.  According to the FAC, the LPA was executed in 2015 and the complications with the Project did not occur until early 2020.  (FAC ¶¶ 62, 71.)  It is unclear when work on the Project began but CMB Defendants acknowledge that it was underway until shelter-in-place orders were issued in March 2020 in connection with the COVID-19 pandemic.  (CMB Mot. at 6.)  Thus, under the facts alleged, it seems at least plausible that some of the limited partners had previously received conditional Lawful Resident Status, reached the two-year anniversary of their conditional status, and subsequently been granted full status under section 1186b(c).  This may ultimately prove not to be the case but with the facts and legal argument before the Court at this stage, it is not apparent that it is categorically impossible that Plaintiffs had achieved unconditional status.

1    have not identified that Delaware state law conflicts with any fundamental policy of the

2    State of California with regard to breach of contract claims.  Accordingly, the LPA's

3    choice of law provision applies under the *Nedlloyd* analysis and Delaware law applies

4    to these claims.

5            **2. Non-parties**

6            CMB Defendants argue for dismissal of non-parties to the LPA (specifically, the

7    partnership itself and Defendants Hogan) on the basis that only a party to a contract

8    may be sued for breach of contract.  (CMB Mot. at 34–35.)  CMB Defendants are

9    correct that Group 48, as the partnership in question, and Defendant Hogan, as

10   another non-party, may not be sued for breach of the Partnership Agreement.

11   *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 172 (Del. 2002).

12   Plaintiffs suggest that Defendant Hogan is liable as an officer of a general partner of

13   the partnership.  (Opp'n to CMB Mot. at 24 n.15.)  However, Delaware law specifically

14   rejects such liability.  *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*,

15   752 A.2d 1175, 1180 (Del. Ch. 1999) ("Delaware law clearly holds that officers of a

16   corporation are not liable on corporate contracts as long as they do not purport to

17   bind themselves individually.")  Accordingly, Plaintiffs' breach of contract claims

18   against Group 48 and Defendant Hogan are dismissed without leave to amend.

19           **3. Adequacy of Plaintiffs' Breach of Contract Claim Against Parties to**

20           **the LPA**

21           Plaintiffs have adequately alleged their breach of contract claim against the

22   parties to the LPA.  As required by Delaware law, Plaintiffs have clearly identified the

23   portions of the LPA that they allege were breached by Defendants (FAC ¶ 239) and

24   how Defendants allegedly breached these terms (*id.* ¶¶ 240-45).  Specifically, Plaintiffs

25   claim that CMB Defendants failed to notify the Plaintiffs that the Project was in default

26   and that additional capital was needed to purchase the Senior Loan and protect the

27   limited partnership's investment.  Defendants argue that Plaintiffs claim fails as they

28   have not plead that the general partner determined that the Partnership required

1  additional capital and that the general partner could have raised sufficient capital.

2  (Opp'n at 35.)  But both arguments raise factual issues that cannot be resolved at the

3  pleading stage.  Whether Plaintiffs are ultimately able to establish the breach of these

4  terms is a question not suited for determination on motion to dismiss.  Accordingly,

5  CMB Defendants' Motion to Dismiss Plaintiffs' breach of contract claim against parties

6  to the contract is denied.

7  **F.  Implied Covenant of Good Faith and Fair Dealing as to CMB Defendants**

8  **1.  Delaware Law Applies**

9       Both California and Delaware recognize an implied covenant of good faith and

10  fair dealing contained in every contract.  *See San Jose Prod. Credit Ass'n v. Old*

11  *Republic Life Ins.*, 723 F.2d 700, 703 (9th Cir. 1984); *Anderson v. Wachovia Mortg.*

12  *Corp.*, 497 F. Supp. 2d 572, 581 (D. Del. 2007).  As such, the breach of this covenant is

13  covered by the LPA and its choice of law provision as this claim concerns the LPA.

14  Applying *Nedlloyd*, the parties have good reason to select Delaware law, (*see supra*

15  Motion to Dismiss for Failure to State a Claim section IV.E.1), and Delaware law on the

16  implied covenant of good faith and fair dealing is not contrary to California policy, *see*

17  *Oracle Corp. v. ORG Structure Innovations LLC*, No. 11-cv-03549-SBA, 2012 WL

18  12951187, at *7 (N.D. Cal. Mar. 30, 2012).

19  **2.  Application of the Covenant**

20       Plaintiffs have not alleged sufficient facts to justify invocation of the covenant of

21  good faith and fair dealing.  "Under Delaware law, the implied covenant of good faith

22  and fair dealing exists in every contract."  *Fundingsland v. OMH Healthedge Holdings,*

23  *Inc.*, 329 F. Supp. 3d 1123, 1137 (S.D. Cal. 2018) (citing *Dieckman v. Regency GP LP*,

24  155 A.3d 358, 367 (Del. 2017)).  "The covenant is best understood as a way of

25  implying terms in the agreement, whether employed to analyze unanticipated

26  developments or to fill gaps in the contract's provisions."  *Dunlap v. State Farm Fire*

27  *and Cas. Co.*, 878 A.2d 434, 441 (Del. 2005) (cleaned up).  The covenant cannot be

28  used to state a claim based on conduct authorized or otherwise handled by the

1   contract, and a plaintiff seeking to invoke it must identify the specific implied

2   contractual obligation that is not within the terms of the agreement. *Id.* at 441–42; *see*

3   *Kyle v. Apollomax, LLC*, 987 F. Supp. 2d 519, 527 (D. Del. 2013). "[T]he elements of an

4   implied covenant claim are those of a breach of contract claim: a specific implied

5   contractual obligation, a breach of that obligation by the defendant, and resulting

6   damage to the plaintiff." *Fundingsland*, 329 F. Supp. 3d at 1137 (cleaned up).

7        Here, Plaintiffs' breach of the implied covenant of good faith and fair dealing

8   claim lacks the necessary allegations to support such a claim. The FAC contains only

9   limited allegations related to the invocation of the covenant. (*See* FAC ¶¶ 246–50.)

10  Most importantly, Plaintiffs fail to establish that such claims are not covered by the

11  LPA. Application of the implied covenant of good faith and fair dealing is a "cautious

12  enterprise" under Delaware law and courts are particular in ensuring that its

13  invocation is necessary. *Kyle*, 987 F. Supp. 2d at 527. The covenant can only be

14  invoked where the conduct in question is not addressed by the contract. Given the

15  Plaintiffs' failure to allege sufficient facts in the FAC to establish that the claims raised

16  are not covered by the LPA, the FAC fails to show invocation of the covenant is

17  necessary. CMB Defendants' Motion to Dismiss the covenant of good faith and fair

18  dealing claim is granted. Plaintiffs will be given leave to amend as amendment does

19  not yet appear futile.

20        **G. Trespass to Chattels as to CMB Defendants**

21        Plaintiffs seek to bring a trespass to chattels claim against CMB Defendants

22  predicated on general allegations that their actions "rendered Plaintiffs' securities

23  worthless and destroyed" and based on the filing of the allegedly frivolous New York

24  and California lawsuits. The choice of law analysis is irrelevant here as regardless of

25  whether California or Delaware law applies to Plaintiffs' trespass to chattels claim, the

26  economic loss rule bars this claim as presently pled.

27        The economic loss doctrine prohibits recovery in tort for a harm that is solely

28  economic. *See Kuhn Const. Co. v. Ocean and Coastal Consultants, Inc.*, 844 F. Supp.

1    2d 519, 526 (D. Del. 2012); *see also Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191

2    (9th Cir. 2021).  While the economic loss rule finds its origins in product liability, it

3    applies to all cases and requires that a plaintiff "sue in contract and not in tort where

4    an action is based entirely on a breach of the terms of a contract between the parties

5    and not on a violation of an independent duty imposed by law." *Israel Discount Bank*

6    *of N.Y. v. First State Depository Co., LLC*, No. 7237-VCP, 2012 WL 4459802, at *14

7    (Del. Ch. Sept. 27, 2012) (internal citations and quotation marks omitted); *see*

8    *Rattagan*, 19 F.4th at 1191.

9            Plaintiffs argue that their trespass to chattels claim seeks recovery distinct from

10    their breach of contract claims "including those which stem from the CMB Defendants'

11    conduct after Plaintiffs signed the LPA that resulted in the decline in value of their

12    partnership interests/securities."  (Opp'n to CMB Mot. at 22.)  However, it is unclear

13    how this differs from the relief sought in Plaintiffs' breach of contract claims.  Plaintiffs

14    cite *Margolis v. Apple Inc.*, 743 F. Supp. 3d 1124 (N.D. Cal. Aug. 6, 2024) for the

15    proposition that a trespass to chattels claim may not be barred by the economic loss

16    rule even where a contract exists.  But there the plaintiffs' breach of contract relief and

17    trespass to chattels claims were clearly distinguishable because the plaintiffs identified

18    unique harms and injuries that differentiated the claims.  *Id.* at 1135-36.  That is not

19    the case here as both Plaintiffs' trespass to chattels claim and breach of contract claim

20    concern Defendants' conduct after signing the LPA.

21            Moreover, even if the economic loss rule did not apply, the trespass to chattels

22    claim is pled in only a brief and conclusory manner.  (FAC ¶¶ 251–257.)  The Court

23    cannot find that this claim falls outside the scope of the bar posed by the economic

24    loss doctrine based on the limited factual allegations in the FAC, regardless of the

25    representations Plaintiffs make in their Opposition.  Thus, CMB Defendants' Motion to

26    Dismiss is granted as to Plaintiffs' trespass to chattels claim, with leave to amend.

27    ////

28    ////

**H.  Civil Conspiracy against Defendant Louis Brisbois and CMB Defendants**

It is unclear whether California or Delaware law should apply as it is not apparent that the allegation of a civil conspiracy falls within the scope of the LPA.  As alleged in the FAC, Defendants engaged in a civil conspiracy to conceal their mismanagement of the partnership's funds by filing fraudulent lawsuits in California and New York.  (FAC ¶¶ 178–79.)  While the mismanagement of funds is within the scope of the LPA, alleged misconduct in concealing that fact does not appear to have any reasonable connection to the agreement.

However, even if Plaintiffs are correct that California law applies, Plaintiffs' civil conspiracy claim fails as presently pled.  Under California's Agent's Immunity Rule, "[a] cause of action for civil conspiracy may not arise, . . . if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty." *Drs.' Co. v. Superior Ct.*, 49 Cal. 3d 39, 44 (1989); *see also Berg & Berg Enterprises*, 131 Cal. App. 4th at 824.  Plaintiffs' civil conspiracy claim is predicated on an alleged conspiracy between Defendant Louis Brisbois and CMB Defendants and, as discussed above, the FAC does not allege facts that establish Defendant Louis Brisbois owed a duty to Plaintiffs.  (*See supra* Motion to Dismiss for Failure to State a Claim section IV.B.1.)  As such, this claim must be dismissed because as currently formulated it alleged that Defendant Louis Brisbois was a conspirator and Plaintiffs have not established that Defendant Louis Brisbois owed a duty to Plaintiffs.  Leave to amend will be granted as amendment is not yet futile.

**I.  UCL**

    **1.  UCL Claims Generally**

As currently formulated in the FAC, Plaintiffs' UCL claims are alleged broadly with little specificity.  Plaintiffs appear to allege that each of the three UCL prongs – unlawful, unfair, and fraudulent – were violated by Defendants actions but the exact basis for those allegations is vague.  Plaintiffs' clearest allegation regarding the nature

of the UCL claims arises in paragraph 189 of the FAC in which Plaintiffs allege the

following:

> Each and all of the Defendants named herein have
> engaged in an "unlawful, unfair or fraudulent business act
> or practice" by breaching fiduciary duties to Plaintiffs,
> aiding and abetting, and conspiring to breach fiduciary
> duties (and subsequently concealing the breach) and
> violating the applicable rules of professional conduct
> through such actions like filing frivolous lawsuits, to
> wrongfully keep Plaintiffs in a state of ignorance regarding
> materially adverse changes to the Project and Plaintiffs'
> investments[.]

(FAC ¶ 189.)  In opposing Defendant Louis Brisbois' Motion, Plaintiffs also highlight

the allegations in this paragraph as the basis for their UCL claims.  (Opp'n to Louis

Brisbois Mot. at 22.)  Based on this paragraph, Plaintiffs appear to allege Defendants

violated all three prongs of the UCL on three bases: (1) Defendants breaching

fiduciary duties to Plaintiffs, (2) Defendants aiding and abetting and conspiring to

breach fiduciary duties, (3) Defendant Louis Brisbois violating Rules of Professional

Conduct.

### 2. CMB Defendants

For CMB Defendants, these allegations appear to be directly within the scope

of the LPA given it concerns an alleged breach of fiduciary duty.  Courts have

generally found that UCL itself does not represent a fundamental policy of California.

*See Yiren Huang v. FutureWei Techs., Inc.*, No. 18-cv-00534-BLF, 2018 WL 10593813,

at *7 (N.D. Cal. Sept. 24, 2018) (finding that the UCL does not represent a fundamental

California policy in part because it does not contain an anti-waiver provision); *see also*

*Century 21 Real Est. LLC v. All Pro. Realty, Inc.*, 889 F. Supp. 2d 1198, 1217 n.15 (E.D.

Cal. 2012) (noting that "courts have held that application of a choice-of-law provision

that bars a UCL claim does not violate a fundamental California public policy.").

Plaintiffs cite several cases in which courts did find that a fundamental policy existed.

But those cases largely concern California's fundamental policy in favor of <u>class action</u>

1   relief and generally find that there is a fundamental policy to permit plaintiffs "to

2   recover minor amounts of money allegedly obtained in violation of the UCL" as a class

3   action remedy, not in the application of the UCL as a whole.  *Aral v. Earthlink, Inc.*, 134

4   Cal. App. 4th 544, 564 (2005); *see Van Slyke v. Cap. One Bank*, 503 F. Supp. 2d 1353,

5   1361 (N.D. Cal. 2007) (finding there is "there is a substantial risk that a California

6   fundamental public policy in favor of class actions" (emphasis added)); *see also Am.*

7   *Online, Inc. v. Superior Ct.*, 90 Cal. App. 4th 1, 17–19 (2001).  Those cases represent a

8   fundamentally different situation than here given that Plaintiff is not presently "rel[ying]

9   solely on California's UCL to support his claims."  *Aral*, 134 Cal. App. 4th at 564.

10          Given the above, the Court finds that general application of the UCL does not

11   represent a fundamental California policy.  Thus, Delaware law applies to Plaintiffs'

12   claims against CMB Defendants.  The UCL is not a Delaware law and thus Plaintiffs

13   cannot bring a claim under the UCL against CMB Defendants.  As such, Plaintiff's UCL

14   claims against CMB Defendants must be dismissed without leave to amend.

15          **3. Defendant Louis Brisbois**

16          Even assuming that California law applies to Defendant Louis Brisbois, Plaintiff

17   fails to sufficiently allege claims against Defendant Louis Brisbois under the UCL.  As

18   the Court found above, Plaintiffs cannot state viable claims against Defendant Louis

19   Brisbois for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, or

20   conspiracy to breach fiduciary duty.  (*See supra* Motion to Dismiss for Failure to State a

21   Claim section IV.B.1.)  This leaves the sole stated basis for Plaintiffs' UCL claims as

22   Defendant Louis Brisbois' alleged violation of the Rules of Professional Conduct.

23   Plaintiffs themselves concede that "failure to comply with the Rules of Professional

24   Conduct does not itself give rise to a claim for civil liability," (Opp'n to Louis Brisbois

25   Mot. at 21), meaning this cannot serve as the basis for an unlawful prong UCL claim.

26   While Plaintiffs state their intent to bring claims under the other two UCL prongs, the

27   FAC lacks any clear factual allegations as to how Defendant Louis Brisbois' actions

28   were fraudulent or unfair beyond conclusory statements.  (*See* FAC ¶ 191.)

1     Most of the allegations against Defendant Louis Brisbois' are covered by

2    California's litigation privilege under Civil Code section 47.  Plaintiffs correctly state

3    that the litigation privilege does not apply to claims of malicious prosecution or "an

4    action by a former client against an attorney for breach of professional duties"

5    *Fremont Reorganizing Corp. v. Faigin*, 198 Cal. App. 4th 1153, 1173–74 (2011).

6    However, as Plaintiffs' claims are not for malicious prosecution and the Court has

7    found that Plaintiffs have not plausibly alleged facts showing that Defendant Louis

8    Brisbois was Plaintiffs' attorney or otherwise owed a duty to Plaintiffs, these exceptions

9    to the litigation privilege do not apply to Plaintiffs.

10     This only applies to actions Defendant Louis Brisbois took in connection with

11    the New York and California suits.  *See* Cal. Civil section 47(b).  Plaintiffs contend that

12    their UCL claims against Defendant Louis Brisbois are also predicated on "wrongful

13    negotiation and drafting of the loan documents . . . ." (Opp'n to Louis Brisbois Mot. at

14    23.)  The FAC contains some discussion of failures in negotiation (*see* FAC ¶¶ 82–83),

15    but the FAC does not identify Defendant Louis Brisbois' alleged failures to adequately

16    negotiate or draft loan documents as a basis for the UCL claims against Defendant

17    Louis Brisbois.  The FAC also includes no allegations as to how these failures

18    constitute fraudulent or unfair business practices under the UCL.  Accordingly, the

19    UCL claims against Defendant Louis Brisbois must also be dismissed, though leave to

20    amend is warranted.

### CONCLUSION

22    In accordance with the above, IT IS HEREBY ORDERED as follows:

23    1.  Defendant Lewis Brisbois Bisgaard & Smith LLP's Motion to Dismiss (ECF

24       No. 44) under Federal Rule of Civil Procedure 12(b)(6) is GRANTED.

25    2.  CMB Defendants' Motion to Dismiss (ECF No. 42) is GRANTED as to lack of

26       personal jurisdiction over Defendants Lee under Federal Rule of Civil

27       Procedure 12(b)(2) and GRANTED IN PART and DENIED IN PART as to

28       failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

1          a. CMB Defendants' Motion under Rule 12(b)(6) is denied as to:

2              i. Plaintiffs' third cause of action for breach of fiduciary duty

3              related to the Participation Agreement (*see* FAC ¶ 160

4              subdivisions (ii) and (iii));

5              ii. Plaintiffs' seventh and eighth cause of action, except as to the

6              claim regarding representations of First Midwest Bank's credit

7              status for which CMB Defendants' Motion is granted; and

8              iii. Plaintiffs' tenth cause of action for breach of contract against

9              Defendants CMB Export and NK.

10         b. CMB Defendants' Motion is granted as to all other claims.

11     3. Plaintiffs' First Amended Complaint (ECF No. 37) is dismissed with leave to

12         amend as to all claims except as to Plaintiffs' breach of contract claim against

13         Defendants Group 48 and Hogan, and Plaintiffs' UCL claim against CMB

14         Defendants.

15     4. Within 30 days of this order, Plaintiffs shall file a Second Amended

16         Complaint.

17

18     IT IS SO ORDERED.

19     Dated:   **March 28, 2025**

20                       Hon. Daniel J. Calabretta

                     UNITED STATES DISTRICT JUDGE

21

22

23

24     DJC1 – bai24cv00807.mtds

25

26

27

28