1  Scott S. Humphreys (SBN 298021)
2  **BALLARD SPAHR LLP**
   2029 Century Park East, Suite 1400
3  Los Angeles, CA 90067
   Telephone: 424.204.4400
4  Facsimile: 424.204.4350
   humphreyss@ballardspahr.com
5
6  Karla M. Vehrs (pro hac vice)
   Kathryn E. Wendt (pro hac vice)
7  **BALLARD SPAHR LLP**
   2000 IDS Center
8  80 South 8th Street
   Minneapolis, MN 55402
9  vehrsk@ballardspahr.com
   wendtk@ballardspahr.com
10
11 Attorneys for Defendants CMB Export
   Infrastructure Investment Group 48, LP;
12 CMB Export LLC; NK Immigration Services,
   LLC; Neal Lee; and Patrick Hogan
13
14
15
16           **UNITED STATES DISTRICT COURT**

17           **EASTERN DISTRICT OF CALIFORNIA**

18 | SHI BAI, *et al.*, | Case No.: 2:24-cv-00807-DJC-DB |

19                Plaintiffs,   **CMB DEFENDANTS' NOTICE OF
                                 MOTION AND MOTION TO DISMISS
20      v.                       PLAINTIFFS' SECOND AMENDED
                                 COMPLAINT**
21 CMB EXPORT INFRASTRUCTURE
   INVESTMENT GROUP 48, LP, a Delaware   [Declaration of Patrick Hogan; Proposed
22 limited partnership; CMB EXPORT LLC, a   Order]
   Texas limited liability company; NK
23 IMMIGRATION SERVICES, LLC, a            Hearing
   Texas limited liability company; NEAL LEE, a   Date:       October 2, 2025
24 Texas resident; PATRICK HOGAN, a        Time:       1:30 p.m.
25 resident; and LEWIS BRISBOIS BISGAARD   Courtroom:  7
   & SMITH LLP, a California Limited Liability   Judge:      Hon. Daniel J. Calabretta
26 Partnership,

27                Defendants.

28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1  **TO THE HONORABLE COURT AND ALL PARTIES:**

2  **PLEASE TAKE NOTICE** that, on October 2, 2025 at 1:30 p.m., or as soon thereafter as

3  may be heard, before the Honorable Daniel J. Calabretta, in Courtroom 7 of the United

4  States District Court for the Eastern District of California, located at 501 I Street,

5  Sacramento, CA 95814, Defendants CMB Export Infrastructure Investment Group 48,

6  LP, CMB Export LLC, NK Immigration Services, LLC, Neal Lee, and Patrick Hogan

7  (collectively, the "CMB Defendants") will and hereby do respectfully move the Court for

8  an Order dismissing with prejudice claims asserted in Plaintiffs' Second Amended

9  Complaint ("SAC") pursuant to Rule 12(b)(2) for lack of personal jurisdiction and Rule

10  12(b)(6) for failure to state a claim. Specifically, the CMB Defendants move to dismiss all

11  claims against Mr. Lee for lack of personal jurisdiction. The CMB Defendants also move

12  to dismiss SAC Counts I (RICO), II (conspiracy to violate RICO), IV (breach of fiduciary

13  duty), and VI (civil conspiracy) in full and Count VII (breach of contract) in part.

14      This Motion is based on this Notice, the attached Memorandum of Points and

15  Authorities, the accompanying Declaration of Patrick Hogan, and all other papers and

16  files in this action, and such other or further evidence or argument that the Court may

17  consider. A [Proposed] Order is filed herewith.

18      **Meet and Confer Certification**. Pursuant to this Court's Standing Order in Civil

19  Cases (Doc. 3-1), the undersigned certifies that counsel for the parties have engaged in,

20  and exhausted, good faith pre-filing meet and confer efforts and have thoroughly

21  discussed the substance of the present Motion to Dismiss and any potential resolution.

22  Counsel have met and conferred on multiple occasions concerning this case generally,

23  and the present Motion in particular, most recently via telephone on June 25, 2025.

24      Respectfully submitted:

25  DATED:  June 30, 2025                By:  */s/ Karla Vehrs*

26                                        Scott S. Humphreys
                                          Karla Vehrs (*pro hac vice*)
27                                        Kathryn Wendt (*pro hac vice*)

28                                        Attorneys for CMB Defendants

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

# TABLE OF CONTENTS

**Page**

**I.**   INTRODUCTION ........................................................................................1

**II.**   BACKGROUND .......................................................................................2

    **A.**   Incorporation of General Factual Background. ...........................2

    **B.**   The Limited Partnership Agreement. ..........................................2

    **C.**   The Loans to the Developer for the Project. ...............................4

    **D.**   The COVID-19 Refinancing. .......................................................6

    **E.**   The Foreclosure Threats. ...........................................................7

**III.**   ARGUMENT ..........................................................................................10

    **A.**   This Court lacks personal jurisdiction over Mr. Lee. .................10

        **1.**   Purposeful availment. .......................................................11

        **2.**   Relation of claims to forum activities. ..............................11

        **3.**   Reasonableness. ..............................................................12

    **B.**   The Section 1962(c) RICO claim fails. .....................................12

        **1.**   The SAC does not establish a RICO enterprise. ..............13

        **2.**   Each defendant did not "direct the affairs" of an enterprise. ..........13

        **3.**   Plaintiffs have not shown a pattern of racketeering activity. ..........14

        **4.**   The RICO claim fails due to lack of causation. ...............16

        **5.**   Plaintiffs have not sustained a concrete RICO injury. ......17

        **6.**   The RICO claims are duplicative of Count VII. ................19

    **C.**   The Section 1962(d) RICO claim cannot stand on its own. .......19

    **D.**   The civil conspiracy claim fails. ................................................20

        **1.**   The civil conspiracy claim is still insufficiently pled. .......20

        **2.**   Agent immunity bars the civil conspiracy claim. ..............21

    **E.**   The breach of fiduciary duty claim cannot survive. ...................22

        **1.**   Only the General Partner could possibly be liable. ..........22

        **2.**   Count IV is time-barred. ...................................................22

    **F.**   Plaintiffs' new breach of contract theory must be dismissed. ...25

**IV.**   CONCLUSION ......................................................................................25

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

MEMORANDUM IN SUPPORT OF CMB DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

*Appel v. Wolf*,
No. 18-CV-814 L (BGS), 2019 U.S. Dist. LEXIS 13377 (S.D. Cal. Jan.
25, 2019) ...................................................................................................5

*Bermingham v. Plumbing & Pipefitting Indus. Local 38*,
No. 93-15937, 1995 U.S. App. LEXIS 8755 (9th Cir. Apr. 14, 1995) .................18, 19

*Briskin v. Shopify, Inc.*,
87 F.4th 404 (9th Cir. 2023) ...................................................................11

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017) ...............................................................................12

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ...............................................................................12

*Castorina v. Bank of America, N.A.*,
No. 2:21-cv-02004-WBS-KJN, 2022 U.S. Dist. LEXIS 83039 (E.D. Cal.
May 6, 2022) ...........................................................................13, 15, 19

*Christ v. Cormick*,
No. 06-275-GMS, 2007 U.S. Dist. LEXIS 49825 (D. Del. July 10, 2007)...............20

*City & Cty. of San Francisco v. Purdue Pharma L.P.*,
491 F. Supp. 3d 610 (N.D. Cal. 2020) .......................................................17

*Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*,
235 F. Supp. 3d 1132 (E.D. Cal. 2017) .............................................13, 14

*Doan v. Singh*,
617 Fed. Appx. 684 (9th Cir. 2015) ..........................................................13

*Dubose v. Wyndham Vacation Resorts, Inc.*,
No. 20-1118-CFC, 2021 U.S. Dist. LEXIS 138475 (D. Del. July 26,
2021) ...........................................................................................23, 24

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ...................................................................13

*Elliot v. Gough*,
No. CV 05-5762 ABC, 2005 U.S. Dist. LEXIS 62084 (C.D. Cal. Dec. 16,
2005) ...................................................................................................17, 18

MEMORANDUM IN SUPPORT OF CMB DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*ESG Capital Partners, LP v. Stratos*,
    828 F.3d 1023 (9th Cir. 2016) ............................................................. 21

*Hellman v. Polaris Indus.*,
    No. 2:21-cv-00949-JAM-DMC, 2022 U.S. Dist. LEXIS 28447 (E.D. Cal.
    Feb. 15, 2022) ..................................................................................... 12

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ................................................................................ 16

*Holmes v. Sec. Invest. Prot. Corp.*,
    503 U.S. 258 (1992) ............................................................................ 16

*Howard v. America Online*,
    208 F.3d 741 (9th Cir. 2000) .............................................................. 19

*In re Juul Labs, Inc.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) ........................................... 14, 15

*Kelmar v. Bank of Am. Corp.*,
    No. CV-12-6826-PSG (Ex), 2012 U.S. Dist. LEXIS 192224 (C.D. Cal.
    Oct. 26, 2012) ..................................................................................... 14

*Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*,
    431 F.3d 353 (9th Cir. 2005) .............................................................. 17

*Manos v. MTC Fin., Inc.*,
    No. SACV 16-01142-CJC, 2018 U.S. Dist. LEXIS 226227 (C.D. Cal.
    Apr. 2, 2018) ....................................................................................... 19

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ............................................................ 11

*Parker v. Learn the Skills Corp.*,
    530 F. Supp. 2d 661 (D. Del. 2008) .................................................... 20

*Peterson v. Kennedy*,
    771 F.2d 1244 (9th Cir. 1985) ............................................................ 11

*Quiniones v. LG Chem, Ltd.*,
    No. 2:21-cv-01612-MCE-JDP, 2023 U.S. Dist. LEXIS 74605 (E.D. Cal.
    Apr. 27, 2023) ..................................................................................... 11

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ............................................................................ 14

*Samaan v. Cenlar FSB*,
    No. 2:20-cv-01887-TLNJDP, 2022 U.S. Dist. LEXIS 52897 (E.D. Cal.
    Mar. 23, 2022) ..................................................................................... 14

iii

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
  806 F.2d 1393 (9th Cir. 1986) ...................................................................... 14

*Shaw v. Nissan N. Am., Inc.*,
  220 F. Supp. 3d 1046 (C.D. Cal. 2016) ..................................................... 19

*Tae Youn Shim v. Lawler*,
  No. 17-cv-04920-EMC, 2019 U.S. Dist. LEXIS 113935 (N.D. Cal. July 9,
  2019) ......................................................................................................... 2, 3

*United States v. Turkette*,
  452 U.S. 576 (1981) ...................................................................................... 13

*Wagh v. Metris Direct, Inc.*,
  363 F.3d 821 (9th Cir. 2003) ....................................................................... 13

*Walden v. Fiore*,
  571 U.S. 277 (2014) ...................................................................................... 11

*Walter v. Drayson*,
  538 F.3d 1244 (9th Cir. 2008) ..................................................................... 14

**State Cases**

*A.W. Fin. Servs., S.A. v. Empire Res., Inc.*,
  981 A.2d 1114 (Del. 2009) ............................................................................ 22

*Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*,
  963 A.2d 746 (Del. Ch. 2009)........................................................................ 25

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*,
  910 A.2d 1020 (Del. Ch. 2006)...................................................................... 20

*Arnold v. Society for Sav. Bancorp*,
  678 A.2d 533 (Del. 1996) ............................................................................... 22

*State ex rel. Brady v. Pettinaro Enters.*,
  870 A.2d 513,525 (Del. Ch. 2005)................................................................. 23

*Doctors' Co. v. Superior Ct.*,
  49 Cal. 3d 39 (1989).......................................................................................... 21

*Dubroff v. Wren Holdings, LLC*,
  Civ. No. 3940-VCN, 2011 Del. Ch. LEXIS 164 (Del. Ch. Oct. 28, 2011) ................. 22

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
  Civ. No. 15754-NC, 1998 Del. Ch. LEXIS 226 (Del. Ch. Nov. 10, 1998)................. 22

*Isaacson, Stolper & Co. v. Artisans' Sav. Bank*,
  330 A.2d 130 (Del. 1974) ............................................................................... 23

iv

*ISN Software Corp. v. Richards, Layton & Finger, P.A.*,
  226 A.3d 727 (Del. 2020) ......................................................................... 22

*Smith v. Donald L. Mattia, Inc.*,
  No. 4498-VCN, 2012 Del. Ch. LEXIS 8 (Del. Ch. Jan. 13, 2012) ............. 24

*In re Tyson Foods, Inc.*,
  919 A.2d 563 (Del. Ch. 2007) .................................................................. 23

*In re Wayport, Inc. Litig.*,
  76 A.3d 296 (Del. Ch. 2013) .................................................................... 22

*Winklevoss Capital Fund, LLC v. Shaw*,
  No. 2018-0398-JRS, 2019 Del. Ch. LEXIS 75 (Del. Ch. Mar. 1, 2019) .......... 23

**Federal Statutes**

18 U.S.C. § 1962 ................................................................................ *passim*

**Federal Rules of Civil Procedure**

Rule 9(b) ............................................................................................... 15

Rule 12(b)(2) .................................................................................... 10, 12

Rule 12(b)(6) .................................................................................... 10, 23

**Regulations**

8 C.F.R. § 204.6(j)(3) ............................................................................... 3

**Other Authorities**

USCIS Policy Manual, Vol. 6, Part G, Ch. 2 ............................................. 3

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1        **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3           This case is a specious attempt by disgruntled foreign investors to recover money

4    they voluntarily and knowingly invested in a Delaware Limited Partnership ten years ago

5    for purposes of obtaining an immigration benefit. On March 31, 2025, this Court issued a

6    detailed Order granting in large part the CMB Defendants' Motion to Dismiss Plaintiffs'

7    First Amended Complaint ("FAC"). (Doc. 68). The Court granted Plaintiffs leave to

8    replead their claims yet again, and Plaintiffs filed their Second Amended Complaint

9    ("SAC") on April 30, 2025. (Doc. 69). Despite getting a third bite at the apple, Plaintiffs

10   have still failed to remedy a host of fatal defects in their pleading.

11          For starters, Plaintiffs have not shown that this Court has personal jurisdiction

12   over Texas resident Neal Lee. Because Plaintiffs have failed to plead any intentional

13   contact with the forum state by Mr. Lee, he must be dismissed from this case.

14          Plaintiffs have also failed to adequately replead their RICO claims. The core

15   theory in Plaintiffs' SAC is that, after the development Project in which the Partnership

16   invested went into default in March 2020, the CMB Defendants and their outside counsel

17   "conspired to coordinate a cover-up to hide their own malfeasance and shift the blame to

18   others" by instituting "sham litigation" against the lender who provided supplemental

19   Project financing in September 2020. (SAC ¶ 3). However, the problem for Plaintiffs is

20   that their SAC still does not establish any association-in-fact enterprise, pattern of

21   actionable racketeering activity, actual or proximate causation, or concrete RICO injury

22   sufficient to confer standing to Plaintiffs. In short, every essential element for stating a

23   RICO claim is lacking, so Counts I and II must be dismissed.

24          The same goes for Plaintiffs' civil conspiracy claim in Count VI. This claim is

25   merely a state law "parrot" of the RICO claims, so it fails for the same reasons.

26          Plaintiffs' breach of fiduciary duty claim cannot survive either. The Court

27   previously dismissed this claim as untimely, granting Plaintiffs leave to plead facts

28   sufficient to toll the statute of limitation. The SAC does not do that. To the contrary, the

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1

SAC and its exhibits prove that Plaintiffs were well-aware of issues with the Project for years. If Plaintiffs genuinely had concerns about the management of the Project or the injection of additional financing, they could have—and should have—pursued those claims sooner. Instead, they sat on their hands. As a result, they cannot now evade the statute of limitation, and Count IV must be dismissed as untimely.

Finally, Plaintiffs' new breach of contract theory in Count VII also fails. For the first time in their SAC, Plaintiffs claim the Co-General Partners of Group 48 breached LPA § VI.A.3 by allegedly failing to "use commercially reasonable efforts" in negotiating loan documents on behalf of the Partnership. But LPA § VI.A.3 merely grants CMB Export and NK Immigration the "full, exclusive, and complete discretion, power and authority" to manage the Partnership—it does not impose any mandatory obligations upon them. Thus, it cannot be used as a basis for Plaintiffs' breach of contract claim.

For those reasons, the CMB Defendants ask the Court to dismiss Mr. Lee from the case and to dismiss with prejudice Counts I, II, IV, and VI in full and Count VII in part.

## II.    BACKGROUND

### A.    Incorporation of General Factual Background.

The CMB Defendants described the history of this dispute in their first motion to dismiss. (Doc. 42 at ECF pp. 13-21). In ruling on that motion, the Court noted it had "previously summarized the background of this action in its prior order (*see* ECF No. 25 at 2-4) and the facts are well known to the Court and parties." (Doc. 68 at 2). Thus, the CMB Defendants will only summarize the background now and note new relevant points.

### B.    The Limited Partnership Agreement.

Plaintiffs are 194 foreign nationals who each invested $500,000 in the Delaware limited partnership CMB Export Infrastructure Investment Group 48, LP ("Group 48" or the "Partnership"). (SAC ¶ 5). They did so for the purpose of obtaining an immigration benefit through the federal government's EB-5 immigrant investor program. (*Id.* at ¶ 6). The EB-5 program allows foreign nationals to apply for a green card if they make a qualifying investment into a U.S.-based infrastructure project. *Tae Youn Shim v. Lawler*,

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

2

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

No. 17-cv-04920-EMC, 2019 U.S. Dist. LEXIS 113935, *2-3 (N.D. Cal. July 9, 2019). For

an investment to qualify under EB-5 law, the entire investment "must be 'at risk.'" *Id.* at *3

(quoting 8 C.F.R. § 204.6(j)(3)). "'[I]f the immigrant investor is guaranteed a return, or a

rate of return on all or a portion of his or her capital,' the investment does not meet EB-5

requirements." *Id.* (quoting USCIS Policy Manual, Vol. 6, Part G, Ch. 2).

To invest in Group 48, each Plaintiff signed the Limited Partnership Agreement

("LPA") and agreed to become a Limited Partner. (SAC ¶ 57, Ex. 7). In the LPA, the

Limited Partners repeatedly acknowledged and agreed that their investment in Group 48

was a "speculative investment, which involve[d] a substantial degree of risk" and was

"fully at risk of total loss." (LPA at pp. 17, 21, 55-57). Thus, when signing the LPA, each

Plaintiff "understood that [his or her] investment [was] fully at risk of total loss and no

return of capital or distributions [was] promised." (LPA § V.D on p. 21).

The Limited Partners accepted that risk and invested in Group 48 so that "they

and their immediate families would qualify for EB-5 visas." (SAC ¶ 56). The LPA itself

makes plain that Plaintiffs invested in Group 48 solely for immigration purposes:

> Each Limited Partner does hereby represent and warrant by the
> execution of this Agreement…**his or her Partnership
> Interest was obtained for EB-5 Investment purposes
> only**…. (LPA § XVIII.E.1 on p. 53, emphasis added).

> Each Limited Partner, by executing and delivering this
> Agreement…hereby represents and warrants to the General
> Partner, the other Partners, and the Partnership…[that] **the
> Limited Partner's Partnership Interest is being purchased
> for such Partner's own account for EB-5 Investment
> purposes only**…. (LPA § XIX.A.1 on p. 55, emphasis added).

In the LPA, Plaintiffs agreed that "the General Partner[1] shall not be responsible to

any Partner as a result of a loss of his or her investment in the Partnership." (LPA §

VI.G.1 on p. 30). They also granted the General Partner wide discretion in running the

---

[1]  CMB Export LLC ("CMB Export") and NK Immigration Services, LLC ("NK Immigration")
were the Co-General Partners of Group 48 and are referred to collectively in the LPA as
the "General Partner." (SAC Ex. 7, LPA at Preamble on p. 1).

Partnership. For example, they gave the General Partner "sole discretion" to invest their Capital Contributions into a qualifying EB-5 project. (SAC ¶ 5 and LPA § III.A on p. 14). Plaintiffs also agreed that, to the maximum extent permitted by law, "the General Partner shall have full, exclusive, and complete discretion, power and authority, to manage, control, administer, and operate the business and affairs of the Partnership" and "to make all decisions affecting such business and affairs." (LPA § VI.A on pp. 24-25).

This included the power to "do all things which [the General Partner] deem[ed] necessary or desirable" to conduct business, such as the power: (a) "to receive, invest, reinvest, and expend the Capital Contributions" of the Limited Partners; (b) "to execute and deliver such documents as may be required in connection with any…loan"; (c) "to enter into, perform, and carry out contracts of any kind"; (d) to employ attorneys and incur legal expenses, "at the expense of the Partnership, for the conduct or settlement of claims and litigation"; (e) to use all "commercially reasonable efforts to meet the objectives of the Partnership"; and (f) "to do any and all other things affecting the rights and obligations of the Partnership." (*Id.*). Without limiting the foregoing, the Limited Partners also explicitly authorized the General Partner to pay "all Partnership expenses" and agreed that the General Partner shall "not be liable for any debts, liabilities, contracts, or obligations of the Partnership." (LPA § VI.C on p. 26).

**C.    The Loans to the Developer for the Project.**

Group 48 pooled the Limited Partners' investments and loaned $450 million into a qualifying EB-5 Project: the renovation of the Century Plaza hotel and surrounding area by Next Century Partners, LLC (the "Developer"). (SAC ¶¶ 5, 8). Group 48 made its loan for the Project pursuant to the Loan Agreement, dated February 24, 2015. (SAC Ex. 8).

Group 48's loan was one of three "tiers" of debt used to finance the Project. (SAC ¶ 8). The most senior debt was a $446 million construction loan (the "Senior Loan") from J.P. Morgan Chase ("JPM"). (*Id.*) The debt next-in-line was a $120 million Senior Mezzanine Loan from Colony Distressed Credit and Special Situations Fund IV, L.P. a/k/a CDCF IV Century Mezz, LLC ("Colony" or the "Senior Mezzanine Lender"). (*Id.*).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

The most junior debt was the $450 million Junior Mezzanine Loan from Group 48. (*Id.*).

All of the Limited Partners knew and understood *before* they invested in Group 48 that the Partnership would hold a junior position on the Project. Each investor received the Confidential Private Placement Memorandum ("PPM"), which contained the offering documents for their investment, including, *inter alia*, a copy of the LPA and a copy of the Loan Agreement.[2] (Decl. of Patrick Hogan, dated June 30, 2025, ¶ 3, Ex. A). The PPM expressly advised the investors that, "in addition to the Loan provided by the Partnership," there would also be "a senior construction loan" for the Project, which was "required…to complete the capital stack for Project construction." (PPM at 4).

The PPM further notified the investors that the Construction Lender on the senior Construction Loan would "require customary forms of collateral," including "a first mortgage lien." (PPM at p. 30). Because the Construction Loan would have first position, the PPM warned the investors that "any failure of the Project Owner to satisfy the terms of the Construction Loan Agreement may have negative financial and/or immigration consequences on the Partnership." (*Id.*).

The PPM also notified the investors that Group 48 would be entering into an Intercreditor Agreement and that the Partnership would "subordinate certain of its interests, rights and remedies" to the Construction Lender in the Intercreditor Agreement. (*Id.* at p. 30). Additionally, the PPM advised the investors that, although the Intercreditor Agreement may have certain protections for Group 48—such as an "ability to cure" and an "ability to purchase the Construction Loan" in the event of the Developer's default— there was "no assurance" that such provisions would be included, "nor assurance that such provisions will not contain exceptions." (*Id.* at 30-31).

The PPM further advised the investors that, due to Group 48's junior position on

---

[2] The LPA and the Loan Agreement are attached to the SAC as Exhibits 7 and 8, respectively, and both of those are *part of* the PPM. Thus, the Court may fairly "consider the entire" PPM—not only the portions self-selected by Plaintiffs—in ruling on the present motion, "without converting it into a motion for summary judgment." *Appel v. Wolf*, No. 18-CV-814 L (BGS), 2019 U.S. Dist. LEXIS 13377, *11-12 (S.D. Cal. Jan. 25, 2019).

5

the Project, an event of default under the senior Construction Loan would have negative

consequences for Group 48 and its Limited Partners:

> There is no assurance that in the event of a default under the
> Construction Loan, the Partnership will have sufficient funds to
> advance payments to cure debt service defaults, will be able
> to provide or obtain the guaranties necessary to assume the
> Construction Loan, or will be able to fund the purchase of the
> Construction Loan. **If the Partnership does not have such
> funds or resources to preserve the Collateral, the
> Construction Lender may foreclose its interests and
> terminate the Project Owner's interest in the Project,
> thereby materially diminishing the value of the Collateral.
> An event of default under the Construction Loan will
> negatively impact the repayment of the [Group 48] Loan,
> and thus, the Investor's return**, and may have a negative
> impact on the Investor for immigration purposes.

(*Id.* at 31, emphasis added).

**D.    The COVID-19 Refinancing.**

Work on the Project progressed until COVID-19 hit and caused problems, such as

"cost overruns," "construction delays," shortages of "building materials," and an attendant

"decrease in Project reserves." (SAC Ex. 4). Due to these issues, "JPM called the Senior

Loan out of balance" in March 2020, "which halted the developer's ability to draw from

the Senior Loan" and forced it "to seek additional funding…to complete the Project."

(SAC ¶ 75). Group 48 "offered to assist in the additional funding through [Group 48] or

an affiliate, to be repaid prior to the Senior Mezzanine Loan." (*Id.* at ¶ 76). But the senior

lenders on the Project "would not consent to such additional funding." (*Id.*).

"Instead, in March of 2020, [the Developer][3] sought additional funding from British

billionaires," David and Simon Reuben, through their business entity Reuben Brothers,

Ltd. and its administrative agent Motcomb Estates Ltd. (collectively, "Reuben Brothers").

(*Id.* at ¶ 10). In connection with its financing, Reuben Brothers entered into multiple

agreements on or around September 1, 2020, including the following:

---

[3]  Next Century Partners, LLC and its sole member NCPMB, LLC are referred to
collectively herein as the "Developer."

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

(1)    A Third Amended and Restated Mezzanine Loan and Security Agreement ("Third Amended Mezzanine Loan"), whereby Reuben Brothers agreed to provide the Developer up to another $275 million for the Project (SAC ¶ 11);

(2)    A Participation Agreement between Reuben Brothers and Colony (SAC ¶ 11 and Ex. 9); and

(3)    A Fourth Amendment to the Intercreditor Agreement, which added Reuben Brothers (through Motcomb Estates Ltd.) as a party and otherwise modified the contract (SAC ¶ 11).

The Third Amended Mezzanine Loan and the Senior Loan both had a maturity date of July 9, 2021; the Developer was unable to repay in full either JPM or Reuben Brothers by that date. (SAC ¶ 96). A "Purchase Option Event" was therefore triggered under the Fourth Amendment to Intercreditor Agreement, whereby Group 48 could buy the Senior Loan and the Senior Mezzanine Loan for approximately $2 billion. (*Id.* at ¶ 97; *see also* Doc. 42-1 at Exs. C, D, E). Group 48 did not exercise that purchase option.[4]

Nonetheless, through July and August 2021, JPM continued "providing monthly construction draws" on the Senior Loan, so "the construction of the condo towers" could continue. (SAC Ex. 11). The Developer was also working to sell the hotel portion of the Project. (*Id.*). However, CMB Export advised the Limited Partners that "the sale of the hotel [was] expected to raise [only] approximately $470 million," whereas "the JP Morgan loan balance [was] approximately $1 billion" for the Senior Loan alone. (*Id.*).

**E.    The Foreclosure Threats.**

In October 2021, Reuben Brothers "purchased the entirety of the Senior Loan from JPM," thereby acquiring an interest in both the Senior Loan and the Senior Mezzanine Loan. (SAC ¶ 100). Thereafter, the other Senior Mezzanine Lender, Colony, sued Reuben Brothers on the grounds that Reuben Brothers was acting in "bad faith" and trying to squeeze-out Colony. (SAC Ex. 12). CMB Export sent a copy of Colony's

---

[4]  In the SAC, Plaintiffs still do not plead that the Limited Partners would have invested $2 billion into Group 48 to permit the Partnership to exercise its purchase option, despite being put on notice of this deficiency in the CMB Defendants' first motion to dismiss.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

7

complaint to the Limited Partners in July 2022. (*Id.*) CMB Export stated it was "monitoring this lawsuit" and that it had met with Colony, Reuben Brothers, and the Developer "in successive one-on-one meetings" in an effort to "understand the intent and positions of the parties regarding the lawsuit" and to "seek an amicable solution that could get rid of the lawsuit." (*Id.*). Group 48 even proposed purchasing Colony's interest in the Senior Mezzanine Loan as a solution, but Reuben Brothers would not consent to that. (*Id.*).

Consequently, CMB Export warned the Limited Partners in July 2022 that Group 48's loan was in danger, as Reuben Brothers was "threatening a senior loan foreclosure to wipe out Colony Capital, which in turn would also wipe out the Partnership's loan." (*Id.*). CMB Export told the Limited Partners that "any loan foreclosure will undoubtedly present a large threat to the Partnership." (*Id.*). It stated:

> The misalignment between the two senior mezzanine lenders, and, in turn, the senior lender and the senior mezzanine lenders, is of great concern to the General Partner as **it could have disastrous consequences for the Partnership**. Having either a senior mezzanine loan foreclosure or a senior loan foreclosure **could lead to a near complete loss to the Partnership**….

(*Id.*, emphasis added).

Shortly after CMB Export sent that letter, Reuben Brothers notified Group 48 on August 25, 2022 that it intended to start a Uniform Commercial Code ("UCC") foreclosure sale to satisfy the Senior Mezzanine Loan. (SAC ¶ 104). Then, on August 31, 2022, Reuben Brothers also sent Group 48 a Notice of Default on the Senior Loan with an election to sell the Project's real property under a Deed of Trust. (*Id.* at ¶ 105).

"Through various notices," CMB Export kept the Limited Partners "apprised of the many issues" with the Project and the General Partner's efforts to work through them. (SAC Ex. 1). On October 10, 2022, CMB Export wrote to the Limited Partners yet again about the "future planned foreclosure sale." (*Id.*). CMB Export noted it was working with counsel on a response to the "foreclosure notice," but it reminded the Limited Partners that Group 48 was "in a subordinate position to the senior debt" on the Project. (*Id.*).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

A few days later, CMB Export wrote to the Limited Partners on October 15, 2022, once again putting them on notice that Group 48's loan was in jeopardy:

> As was stated in our previous notices, the senior lenders have initiated non-judicial proceedings in California and New York. If the senior lenders are successful in their attempts to foreclose, **the Partnership would suffer a total loss of principal and interest due**….

(SAC Ex. 13, emphasis added).

In an attempt to stop that from happening, Group 48 sued Rueben Brothers in state court in California and New York. (*Id.*). CMB Export apprised the Limited Partners of these lawsuits, encouraged them to read the pleadings, and invited questions about the litigation. (*Id.*). CMB Export also sent the Limited Partners an FAQ sheet about the lawsuits. (SAC Ex. 14). Therein, it made clear that the litigation against Reuben Brothers was a final effort to avoid foreclosure: "To be absolutely clear, there is no Plan B to the lawsuits that are filed to stay the foreclosure actions…. If the lawsuit is not successful, Reuben Brothers will be able to proceed to foreclosure proceedings." (*Id.*).

CMB Export went on to explain that, in the event of a foreclosure sale, both the Senior Loan and the Senior Mezzanine Loan would have to be satisfied "before the Partnership will receive anything out of the foreclosure." (*Id.*). The total amount owed on the Senior Loan exceeded $957 million, and the total amount owed on the Senior Mezzanine Loan exceeded $1.3 billion. (*Id.*). Thus, CMB Export stated: "[I]f we are unsuccessful in stopping the foreclosure and eliminating the default interest, it is unlikely we will see anything out of the foreclosure to repay the Partnership loan." (*Id.*).

Plaintiffs do not and cannot plead that any of them objected to suing Reuben Brothers. Hearing nothing from the Limited Partners, Group 48 proceeded with the lawsuits, both of which are still ongoing. Despite those suits, Reuben Brothers foreclosed on the Project's real estate in early 2023 "via a credit bid" and "seized control of the Project." (SAC at ¶¶ 106, 109). Reuben Brothers' "foreclosure sale essentially wiped out any financial benefits that EB-5 investors in Century City could or would have had, as

9

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

well as [Group 48's] own monetary interests in the Project." (*Id.* at ¶ 106).[5]

## III.    **ARGUMENT**

The CMB Defendants move to dismiss all claims against Neal Lee under Rule 12(b)(2) for lack of personal jurisdiction. The CMB Defendants also move to dismiss with prejudice Counts I, II, IV, and VI in full and Count VII in part pursuant to Rule 12(b)(6).

### A.    This Court lacks personal jurisdiction over Mr. Lee.

In its Order on the CMB Defendants' first motion to dismiss, the Court dismissed the claims against Mr. Lee for lack of jurisdiction, but granted Plaintiffs leave to amend their complaint to plead sufficient, non-speculative facts to "clearly tie Defendant Lee's actions to California." (Doc. 68 at 8). Plaintiffs have failed to do that.

In the SAC, Plaintiffs contend Mr. Lee is the Vice President of Finance for CMB Export. (SAC ¶ 21). "In that role," Mr. Lee was allegedly "actively involved in negotiating and financing CMB's loan to the Borrower to construct the Project." (*Id.* at ¶ 39). According to Plaintiffs, Mr. Lee "had numerous communications with the various lenders and borrowers" on the Project and "their respective counsel." (*Id.*) Mr. Lee also allegedly communicated with Group 48's counsel, Lewis Brisbois Bisgaard & Smith LLP ("LB"), and with Michael Rosenfeld, a representative of the Developer. (*Id.*).

Plaintiffs further claim that, after the Developer defaulted on the Senior Loan and sought additional funding from Reuben Brothers, Mr. Lee and LB "together received an e-mail from [Mr.] Rosenfeld sending a draft Term Sheet," which noted certain putative terms of Reuben Brothers' financing offer. (*Id.* at ¶ 78). After receiving that Term Sheet, Mr. Lee allegedly "approved the unreasonably short maturity date" for Reuben Brothers' loan and "failed to ensure CMB had an opportunity to purchase up the stack"—even though Mr. Lee admittedly did *not* sign the amended loan documents. (*Id.* at ¶ 39). When

---

[5]  Plaintiffs do not and cannot allege that the foreclosure sale eliminated their ability to obtain EB-5 visas. Because the Project created the requisite number of jobs and is now complete, it "already qualified investors for their permanent visa." (SAC Ex. 1). Thus, even if the Limited Partners cannot receive a return of their Capital Contributions, the purpose of their investment in Group 48 has been fulfilled. (LPA § XVIII.E.1 on p. 53).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Reuben Brothers subsequently threatened to foreclose on the Project, Mr. Lee allegedly "met with" LB and CMB Export's President "at or about" July or August 2022, "to address the pending foreclosure and sale." (*Id.* at ¶ 21). Plaintiffs claim "upon information and belief" that, "during this meeting," "Defendants together decided" to "conceal the Term Sheet" and to blame Reuben Brothers "for the loss of investor funds." (*Id.* at ¶¶ 21, 238).

Those absurd and conclusory allegations do not suffice to subject Mr. Lee to suit in California under the three-part test for determining specific personal jurisdiction.

### 1.    Purposeful availment.

For starters, Plaintiffs' allegations do not establish that Mr. Lee had any "intentional contact with the forum state." (Doc. 68 at 6). Significantly, "it is 'the defendant's contacts *with the forum State itself*, not the defendant's contacts with persons who reside there' that are relevant to the inquiry." (*Id.*, quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis added)). The SAC does not allege that Mr. Lee actually did anything *in California*—let alone that he "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that [he knew was] likely to be suffered in the forum state.'" *Briskin v. Shopify, Inc.*, 87 F.4th 404, 412 (9th Cir. 2023) (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)).

At best, the SAC suggests only that Mr. Lee spoke to people who allegedly reside in California (*i.e.,* Mr. Rosenfeld and attorneys at LB). That does not suffice to establish minimum contacts with the forum state. *Peterson v. Kennedy*, 771 F.2d 1244, 1261–62 (9th Cir. 1985) (holding that defendant's telephone calls to plaintiff and his physician in California did not establish personal jurisdiction over defendant because the "use of the mails, telephone, or other…communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state").

### 2.    Relation of claims to forum activities.

Because the SAC does not allege that Mr. Lee engaged in any activities in California in the first place, the claims against him cannot possibly "arise[] out of or relate[] to [his] forum-related activities." *Quiniones v. LG Chem, Ltd.*, No. 2:21-cv-01612-

11

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

MCE-JDP, 2023 U.S. Dist. LEXIS 74605, *4 (E.D. Cal. Apr. 27, 2023). Moreover, to the extent Plaintiffs are now attempting to assert jurisdiction over Mr. Lee due to his alleged role in "negotiating" Group 48's loan to the Developer in 2015, such conduct does not give rise to Plaintiffs' claims. (SAC ¶ 39). Rather, Plaintiffs' claims are based on an alleged conspiracy "beginning in July of 2021" to bring "sham litigation" against Reuben Brothers. (*Id.* at ¶ 3). Thus, there is no "connection" between any alleged "activities in California" by Mr. Lee and Plaintiffs' claims against him. *Hellman v. Polaris Indus.*, No. 2:21-cv-00949-JAM-DMC, 2022 U.S. Dist. LEXIS 28447, *7 (E.D. Cal. Feb. 15, 2022).

### 3.    Reasonableness.

Lastly, it would not be fair, just, or reasonable to subject Mr. Lee to suit in California. The "primary concern" under this prong is "the burden on the defendant" in litigating in a foreign state. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 263 (2017). This burden is especially worrisome where, as here, the forum state has "little legitimate interest in the claims in question." *Id.*

As explained in the CMB Defendants' choice-of-law analysis in their prior motion to dismiss briefing, California has little to no interest in the claims in this case. (Doc. 42 at ECF pp. 33-35; Doc. 64 at ECF pp. 14-16). The only reason Plaintiffs filed in this District is presumably because LB attorney John Poulos resides in Sacramento, and the Project is located in Los Angeles. But that is insufficient to compel Mr. Lee into court 1,700 miles from his home in Texas, where he lives and works. (Doc. 42-2, 7/29/2024 Lee Decl. ¶ 4). It would therefore be an undue and prejudicial burden on Mr. Lee to force him to litigate in this forum—especially because he could not have "reasonably anticipate[d] being haled into court" in California given his lack of meaningful, purposeful contacts with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 486 (1985). For those reasons, the claims against Mr. Lee must be dismissed under Rule 12(b)(2).

### B.    The Section 1962(c) RICO claim fails.

The gravamen of Plaintiffs' case is their defunct claim that the CMB Defendants and their lawyers at LB violated RICO, 18 U.S.C. § 1962(c). "To state a claim under

12

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

RICO, a plaintiff must allege the existence of a RICO enterprise, the existence of a pattern of racketeering activity, a nexus between the defendant and either the pattern of racketeering activity or the RICO enterprise, and a resulting injury to the plaintiff." *Castorina v. Bank of Am.*, N.A., No. 2:21-cv-02004-WBS-KJN, 2022 U.S. Dist. LEXIS 83039, *18 (E.D. Cal. May 6, 2022). Here, Plaintiffs' RICO claim fails on every prong.

### 1.    The SAC does not establish a RICO enterprise.

First, the SAC does not plead a RICO enterprise. To plead an association-in-fact enterprise, a plaintiff "must plead that the enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). The "enterprise" must also be pled "separate and apart from the pattern of activity in which it engages" and must be "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 577 (1981). "[B]are assertions of a pattern of racketeering activity do not establish an enterprise and they do not, therefore, satisfy Plaintiffs' burden." *Doan v. Singh*, 617 Fed. Appx. 684, 686 (9th Cir. 2015).

Here, the SAC alleges the "common purpose" was "concealing critical information about the prior loan negotiations and subsequent events…that resulted in the complete loss of Plaintiffs' investments." (SAC ¶ 135). But that is merely rehashing the alleged wrongful acts without specifying "a decision-making structure for the enterprise." *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 831 (9th Cir. 2003). This deficiency alone is fatal to the RICO claim, as "the predicate acts of racketeering activity, by themselves, do not satisfy the RICO enterprise element." *Id.*[6]

### 2.    Each defendant did not "direct the affairs" of an enterprise.

The SAC also does not establish that each of the CMB Defendants "direct[ed] the

[6]  *See also Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017) (dismissing RICO claim because FAC did "not contain factual allegations explaining the structure of the alleged enterprise, or explain how defendants coordinated to create a vehicle with mechanisms for carrying out RICO predicate crimes").

13

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

affairs" of a RICO enterprise. *Kelmar v. Bank of Am. Corp.*, No. CV-12-6826-PSG, 2012 U.S. Dist. LEXIS 192224, *20 (C.D. Cal. Oct. 26, 2012). "Liability for participating in the 'conduct' of a RICO enterprise extends only to those who 'have some part in directing [the enterprise's] affairs.'" *Id.* (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). This requires more than "simply being involved"; and "performing services for the enterprise does not rise to the level of direction." *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008). "Thus, it is not enough to claim that defendants agreed to conduct and participate, directly or indirectly, in the enterprise through a pattern of activity." *Kelmar*, 2012 U.S. Dist. LEXIS 192224, at *21.

The SAC fails to show how any of the CMB Defendants "directed the affairs of the alleged enterprise." *Id.* at *20-21. There are simply no facts in the SAC to suggest that any particular defendant "occupied a position in the chain of command through which the affairs of the enterprise [were] conducted", "knowingly implemented the decisions of upper management" in the enterprise, or participated in a manner "vital to the mission's success." *Id.* at *21 (cleaned up) (quoting *Walter*, 538 F.3d at 1249). For this additional reason, the RICO claims fail. *Samaan v. Cenlar FSB*, No. 2:20-cv-01887-TLNJDP, 2022 U.S. Dist. LEXIS 52897, *17 (E.D. Cal. Mar. 23, 2022).

### 3. Plaintiffs have not shown a pattern of racketeering activity.

"To plead a pattern of racketeering activity, plaintiffs must allege that defendants committed at least two of the statutorily enumerated predicate acts." *Comm. to Protect*, 235 F. Supp. 3d at 1177. The predicate acts alleged in the SAC are mail and wire fraud. (SAC ¶ 165). "Establishing a violation of the wire or mail fraud statute requires that Plaintiffs show that '(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States [wires or] mails or caused a use of the United States [wires or] mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud.'" (Doc. 68 at 16, quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399–1400 (9th Cir. 1986)). "The scheme to defraud must involve an affirmative, material misrepresentation." (*Id.*, citing *In re Juul*

14

*Labs, Inc.*, 497 F. Supp. 3d 552, 599–600 (N.D. Cal. 2020)). The complaint also "must state with particularity the circumstances constituting fraud" in order to satisfy Rule 9(b). *Castorina*, 2022 U.S. Dist. LEXIS 83039, at *18. The SAC does not do that.

To support their claims of mail and wire fraud, Plaintiffs points to four notices sent by the General Partner to the Group 48 Limited Partners, dated September 14, 2021, July 27, 2022, October 15, 2022, and June 19, 2024. (SAC ¶¶ 143, 145, 150, 161). But Plaintiffs have failed to identify with particularity an affirmative statement in any of these communications that was actually false or misleading. Instead, Plaintiffs claim the opposite—that CMB Export's notices should have disclosed *more* information about the Reuben Brothers' financing deal and the subsequent litigation against Reuben Brothers. (SAC ¶¶ 3, 108, 109). However, an alleged omission of additional information is not an "express affirmative representation." *In re Juul Labs*, 497 F. Supp. 3d at 625.

Moreover, when read objectively *in their entirety*, the notices clearly advised the Limited Partners of concerns with the Project. As detailed above, the General Partner warned the Limited Partners right away in March 2020 about "construction delays," "cost overruns," shortages of "building materials," and a "decrease in Project reserves." (SAC Ex. 4). In the September 14, 2021 notice, the General Partner told the Limited Partners that JPM's loan balance was approximately $1 billion and that JPM had sent "reservation of rights letters" to the Developer and the subordinate lenders. (SAC Ex. 11).

Then, on July 27, 2022, the General Partner expressly told Plaintiffs and the other Limited Partners that Reuben Brothers was "threatening a senior loan foreclosure," which would "wipe out the Partnership's loan" and "have disastrous consequences for the Partnership." (SAC Ex. 12). After Reuben Brothers started foreclosure proceedings, CMB Export wrote to the Limited Partners again on October 15, 2022, advising them that, "if the senior lenders are successful in their attempts to foreclose, the Partnership would suffer a total loss of principal and interest." (SAC Ex. 13).

Even after Group 48 sued Reuben Brothers to enjoin the foreclosure, it still continued to warn the Limited Partners that, if successful, Reuben Brothers' foreclosure

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

efforts would "result in a complete loss of Group 48's investment." (SAC Ex. 16). And

when the appellate court entered its order "dismissing the New York Lawsuit" against

Reuben Brothers, the General Partner advised the Limited Partners of that development.

(*Id.*). Thus, Plaintiffs have understood for years that their investments were in jeopardy,

and their post-hoc complaints about alleged "concealment" ring hallow.

### 4.     The RICO claim fails due to lack of causation.

A RICO plaintiff must plead facts to show that each predicate act "not only was a

'but for' cause of his injury, but was the proximate cause as well." *Holmes v. Sec. Invest.*

*Prot. Corp.*, 503 U.S. 258, 268 (1992). There must be "some direct relation between the

injury asserted and the injurious conduct alleged." *Hemi Grp., LLC v. City of New York*,

559 U.S. 1, 9 (2010). A "link that is too remote, purely contingent, or indirect is

insufficient." *Id.* Accordingly, in its March 31, 2025 Order, the Court instructed Plaintiffs

that, in any amended pleading, they "must be clear as to the causal link between the

RICO violations and the harm alleged." (Doc. 68 at 18). Plaintiffs have not done that.

Plaintiffs' causation theory in the SAC is that Defendants' "*inaction*…resulted in

the loss of Plaintiffs' investment." (SAC ¶ 30, emphasis original). According to Plaintiffs,

Defendants "failed to act" once Reuben Brothers "entered the picture" in 2020. (SAC ¶

1). Because Defendants allegedly "did nothing" "between July 14, 2020 and September

1, 2020 to protect" the Group 48 investors, Reuben Brothers was later able to "seize

control of the Project" and foreclose on it. (*Id.* at ¶¶ 14, 109, 162).

That causation theory ignores the undisputed fact that, by the time Reuben

Brothers "entered the picture," the Project was already under water. JPM had already

called the Senior Loan out of balance in March 2020, "which halted the developer's

ability to draw from the Senior Loan" and "forced the developer to seek additional funding

in March 2020 to complete the Project." (*Id.* at ¶ 75). By Plaintiffs' own admission, "the

senior lenders would not consent" to Group 48 providing additional funding and moving

up in the capital stack. (*Id.* at ¶ 76). Thus, the funding had to come from elsewhere, and

Plaintiffs do not and cannot allege there was any other viable alternative lender willing to

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

16

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

invest in a distressed "$2.5 billion luxury hotel, condominium, and retail project" during the height of the COVID-19 pandemic. (*See id.* at ¶ 5).

Plaintiffs further contend that, had they received more information about the Reuben Brothers' financing deal, "they would have demanded that [Group 48] reject further upsizing [of] the Loan and requested either changes to the Third Amended Mezzanine Loan and Fourth Amendment to the Intercreditor Agreement or a new lender." (SAC ¶ 109). But Plaintiffs had no ability to do that. Under the LPA, the Limited Partners have no right to "demand" that the General Partner take any action on behalf of Group 48. To the contrary, the LPA vests in the General Partner "*full, exclusive, and complete* discretion, power and authority" to manage the Partnership. (LPA § VI.A.3). Similarly, Plaintiffs point to nothing at all giving Group 48 the right to unilaterally force the Developer to either "change" its lending terms with Reuben Brothers or find a different lender. And even if Group 48 had been able to convince Reuben Brothers in 2020 to consent to less onerous lending terms, it is pure speculation that such alternative terms would have saved the Project from foreclosure three years later in April 2023.

Plaintiffs' failure to establish a sufficient "nexus" between the CMB Defendants' conduct and Plaintiffs' alleged injury "is fatal to [their] RICO claims." *City & Cty. of San Francisco v. Purdue Pharma L.P.*, 491 F. Supp. 3d 610, 653-659 (N.D. Cal. 2020) (rejecting RICO claims because plaintiff "failed to establish a direct relationship between its injuries and Defendants' predicate acts," but rather put forth only a "causal chain" theory that was "too attenuated to satisfy RICO's narrow definition of proximate cause").

**5.    Plaintiffs have not sustained a concrete RICO injury.**

Plaintiffs also have not pled a cognizable RICO injury. A RICO plaintiff must allege a qualifying injury to "a specific business or property interest." *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 364 (9th Cir. 2005). "Financial losses, in and of themselves, are insufficient." *Id.* "Allegations of loss…based only [on] speculation" are also insufficient. *Elliot v. Gough*, No. CV 05-5762 ABC (VBKx), 2005 U.S. Dist. LEXIS 62084, *6 (C.D. Cal. Dec. 16, 2005).

17

1    Plaintiffs invested in Group 48 knowing that their investments were "fully at risk of

2    total loss" and that "no return of capital or distributions [were] promised." (LPA § V.D on

3    p. 21.) Thus, Plaintiffs do not allege that Defendants' conduct directly caused them to

4    lose $500,000 each. Rather, Plaintiffs' claim is that Defendants deprived Plaintiffs of "any

5    chance" at repayment of their investments. (SAC ¶¶ 166, 232). That is, Plaintiffs are

6    suing LB and the CMB Defendants under the theory that, had Group 48 not sued

7    Reuben Brothers, the Project may have become profitable enough in the future for the

8    Developer to repay Group 48's loan and for Group 48 to then, in turn, return all or a

9    portion of Plaintiffs' Capital Contributions to them. Such "speculation" about the

10    "possibility" of a return of the investors' capital contributions "is a far cry from the

11    requisite 'concrete financial loss' to maintain a RICO claim." *Elliot v. Gough*, No. CV 05-

12    5762 ABC (VBKx), 2005 U.S. Dist. LEXIS 62084, *6 (C.D. Cal. Dec. 16, 2005).

13    Indeed, the Ninth Circuit dismissed analogous RICO claims in *Bermingham v.*

14    *Plumbing & Pipefitting Indus. Local 38*, No. 93-15937, 1995 U.S. App. LEXIS 8755, *4

15    (9th Cir. Apr. 14, 1995). Therein, a plumber sued his union and others for allegedly

16    diverting funds from the union's Health and Welfare Trust Fund ("H&WTF"). *Id.* at *2. The

17    plumber's theory was that, "if the money had not been transferred from the H&WTF," he

18    could have received "higher medical benefits" or "higher wages." *Id.* at *4. The Ninth

19    Circuit deemed that injury "far too speculative to confer standing under civil RICO." *Id.* In

20    particular, the court noted that, even if the allegedly diverted monies would have stayed

21    in the Trust Fund, "it [was] mere speculation that those contributions would have trickled

22    down" to the plaintiff—in part because the Fund administrator had "discretion" over

23    allocations from the Fund, so "it [was] impossible to predict" what additional wages or

24    benefits, if any, the plaintiff may have received from the Fund. *Id.* at *5-6.

25    That is precisely the situation here. When they signed the LPA, Plaintiffs granted

26    the General Partner "full, exclusive, and complete discretion, power and authority" to

27    manage the Partnership, including its finances. (LPA § VI.A on p. 24). In the event that

28    the Partnership did have a positive cash flow, the General Partner could elect, "in its sole

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

18

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

discretion," to make distributions to the Limited Partners. (LPA § V.C). Alternatively, the General Partner could exercise its discretion to withhold distributions and maintain reserves to pay the Partnership's existing and future expenses. (*Id.*; *see also* LPA § II on pp. 4-5). Thus, *even if* Reuben Brothers had not entered the capital stack, foreclosed on the Project, and been sued by Group 48, "it is impossible to predict" whether the Project would have become profitable post-COVID, whether the Developer would have repaid Group 48's loan in full, and whether, in turn, "those contributions would have trickled down" to Plaintiffs. *See Bermingham*, 1995 U.S. App. LEXIS 8755, at *4. Thus, Plaintiffs' injury is purely speculative and cannot support a RICO claim. *See id.*

### 6. The RICO claims are duplicative of Count VII.

Finally, Plaintiffs' "RICO claim[s] must be dismissed for the independent reason that [they] [are] nothing more than a dressed-up attempt to assert a breach of contract claim, which plaintiff[s] already allege[]" in Count VII. *Castorina*, 2022 U.S. Dist. LEXIS 83039, at *19-20. The SAC makes clear that "the alleged conduct under [the] RICO claim[s]—failing to notify the investors about the Term Sheet, not properly protecting Group 48's interest in the Project, and instituting "sham litigation" against Reuben Brothers—is the same exact "alleged conduct upon which [Plaintiffs'] breach of contract claim is premised." *See id.* However, "a plaintiff cannot state a claim under the Civil RICO statute by simply artfully pleading what is essentially a breach of contract claim." *Manos v. MTC Fin., Inc.*, No. SACV 16-01142-CJC, 2018 U.S. Dist. LEXIS 226227, *7 (C.D. Cal. Apr. 2, 2018). For this additional reason, the RICO claim must be dismissed.

### C. The Section 1962(d) RICO claim cannot stand on its own.

Plaintiffs' second cause of action is for conspiracy to violate RICO under 18 U.S.C. § 1962(d). However, "plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO." *Howard v. America Online*, 208 F.3d 741, 751 (9th Cir. 2000). Because Plaintiffs' first cause of action for an alleged violation of Section 1962(c) fails, "the conspiracy claim must also fail." *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1058 (C.D. Cal. 2016).

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**D.      The civil conspiracy claim fails.**

Plaintiffs' civil conspiracy claim fails for the same reasons as the RICO claims, plus the additional reason that the SAC does not overcome the agent immunity rule.

**1.      The civil conspiracy claim is still insufficiently pled.**

"To state a claim for civil conspiracy, a plaintiff must plead facts supporting (1) the existence of a confederation or combination of two or more persons; (2) that an unlawful act was done in furtherance of the conspiracy; and (3) that the conspirators caused actual damage to the plaintiff." *Allied Cap. Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1036 (Del. Ch. 2006). Plaintiffs have not met that burden.

***First***, Plaintiffs have not pled an "enterprise", "confederation", or "combination." For the reasons stated above in Section III.B.1, the SAC "lacks any facts or indication that there was a combination or agreement to perpetrate fraud between" the CMB Defendants and LB. *Christ v. Cormick*, No. 06-275-GMS, 2007 U.S. Dist. LEXIS 49825, *19 (D. Del. July 10, 2007). Plaintiffs' "conclusory allegations" about an "unlawful scheme" amongst the Defendants "do not satisfy the pleading requirement." *Id.*

***Second***, Plaintiffs have not pled any underlying "unlawful act." (*See supra* § III.B.3). "Civil conspiracy, standing alone, is not an independent cause of action." *Parker v. Learn the Skills Corp.*, 530 F. Supp. 2d 661, 681 (D. Del. 2008). "There must be some underlying actionable tort by each individual defendant in order to obtain recovery on a civil conspiracy theory." *Id.* Plaintiffs have not pled any independent, actionable tort to support their civil conspiracy claim. Plaintiffs contend only that the CMB Defendants committed "overt acts," such as "commencing the California and New York State Actions", "providing false statements under oath", and "requesting additional capital." (SAC ¶¶ 236-237). But Plaintiffs fail to plead with particularity that any of those so-called "overt acts" amounted to fraud or any other "actionable tort *by each individual defendant*, as is required for recovery on a civil conspiracy." *Parker*, 530 F. Supp. 2d at 681.

***Third***, Plaintiffs have not shown the CMB Defendants actually and proximately caused the alleged harm. Plaintiffs claim they lost "their investment funds" as a result of

20

the alleged civil conspiracy between the CMB Defendants and LB. (SAC ¶ 239). But as detailed above in Section III.B.4, Plaintiffs do not and cannot plead that they would have received a return of their Capital Contributions but for Defendants' alleged conduct. For those reasons, the civil conspiracy claim is fatally defective.

### 2.    Agent immunity bars the civil conspiracy claim.

In its March 31, 2025 Order, this Court dismissed Plaintiffs' civil conspiracy claim based on California's agent immunity rule. (Doc. 68 at 37). Under that rule, "[a] cause of action for civil conspiracy may not arise…if the alleged conspirator…was not personally bound" by a duty owed to the plaintiff, but rather "was acting only as the agent…of the party who did have that duty." *Drs.' Co. v. Superior Ct.*, 49 Cal. 3d 39, 44 (1989). In applying that rule, the Court held that LB was merely acting as the CMB Defendants' "agent," so they cannot be said to have "conspired" together. (Doc. 68 at 21-25, 37).

In their SAC, Plaintiffs now attempt to evade the agent immunity rule through an exception for claims against "'an attorney who went beyond a professional duty as part of a conspiracy for the attorney's financial gain.'" (*See id.* at 21, quoting *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1037 (9th Cir. 2016)). However, the only allegation in the SAC to support that exception is Plaintiffs' conclusory statement that LB "operated beyond LB's standard role as counsel by orchestrating a scheme to fabricate facts in litigation narratives." (SAC ¶ 136). That unsupported assertion does not suffice.

Indeed, the only alleged "fabrication" in the Reuben Brothers cases is that Messrs. Lee and Hogan allegedly lied under oath about not having received the Participation Agreement before signing the Fourth Amendment to the Intercreditor Agreement. (SAC ¶¶ 117-119). But on this point, Plaintiffs are intentionally conflating the final Participation Agreement with the draft Term Sheet. They are two different documents with different terms. (*Compare* SAC Ex. 6 *with* Ex. 9). And, on their third attempt at pleading their claims, Plaintiffs still have not come forward with any facts showing that any of the CMB Defendants actually received a copy of the Participation Agreement (because they did not). Thus, the exception to the agent immunity rule does not apply, and Count VI fails.

21

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**E.      The breach of fiduciary duty claim cannot survive.**

Count IV of the SAC is for breach of fiduciary duty against Group 48, CMB Export, NK Immigration, Mr. Lee, and Mr. Hogan. This claim is not properly asserted against any party other than the Co-General Partners. This claim is also time-barred.

**1.      Only the General Partner could possibly be liable.**

Plaintiffs' fiduciary duty claim fails as to Group 48, Mr. Lee, and Mr. Hogan for want of any fiduciary relationship. Group 48 itself does not owe fiduciary duties to its Limited Partners. *In re Wayport, Inc. Litig.*, 76 A.3d 296, 322-323 (Del. Ch. 2013) (dismissing analogous breach of fiduciary duty claim against corporation because, "as a corporate entity, [the corporation] did not owe fiduciary duties to its stockholders").[7] Nor can the entity itself be held vicariously liable for any alleged misconduct by its officers or managers. *See Arnold v. Society for Sav. Bancorp*, 678 A.2d 533, 540 (Del. 1996).

Messrs. Lee and Hogan do not owe fiduciary duties to the Limited Partners either. Where, as here, the general partner of a limited partnership is an entity, "it is the general partner who owes the limited partners fiduciary duties, not the management of the general partner, even though they make the decisions for that business entity." *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 1998 Del. Ch. LEXIS 226, *19 (Del. Ch. Nov. 10, 1998). Count IV must be dismissed as to Mr. Lee, Mr. Hogan, and Group 48.

**2.      Count IV is time-barred.**

Plaintiffs' fiduciary duty claim is also time-barred. Breach of fiduciary duty claims are generally subject to a three-year statute of limitations. *Dubroff v. Wren Holdings, LLC*, No. 3940-VCN, 2011 Del. Ch. LEXIS 164, at *44-45 (Del. Ch. Oct. 28, 2011). "Delaware is an 'occurrence rule' jurisdiction, meaning a cause of action accrues 'at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action.'" *ISN Software Corp. v. Richards, Layton & Finger, P.A.*, 226 A.3d 727, 732 (Del. 2020). In its

---

[7]  The CMB Defendants are unaware of any Delaware case imposing any fiduciary duties on the partnership itself. In the analogous context of corporations, Delaware law is clear that the "corporation does not owe fiduciary duties to its stockholders." *A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1127 n.36 (Del. 2009).

MEMORANDUM IN SUPPORT OF CMB DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

March 31, 2025 Order, this Court noted, however, that "fraud or concealment of the occurrence can toll the running of the limitations period." (Doc. 68 at 29, citing *Isaacson, Stolper & Co. v. Artisans' Sav. Bank*, 330 A.2d 130, 132 (Del. 1974)). So, it gave Plaintiffs leave to amend their FAC to plead facts establishing tolling. (*Id.* at 30).

Plaintiffs have failed to do that. In order to toll the statute of limitation, a plaintiff must "plead facts that show it was 'practically impossible for [him] to discover the existence of a cause of action.'" *Dubose v. Wyndham Vacation Resorts, Inc.*, No. 20-1118-CFC, 2021 U.S. Dist. LEXIS 138475, *7 (D. Del. July 26, 2021) (quoting *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007)). If the plaintiff "could have discovered his rights by the exercise of reasonable diligence," but failed to do so, the discovery rule does not revive his claims. *Id.*[8]

Plaintiffs' fundamental theory in the SAC is that, "beginning in July of 2021," the CMB Defendants and LB "conspired to coordinate a cover-up to hide their own malfeasance and shift the blame to others." (SAC ¶ 3). However, July 2021 is long after much of the purported misconduct pled in the SAC, including (a) the negotiation of the initial loan documents for the Project in 2015, (b) the refinancing of the Project in 2020, and (c) the lead-up to the Developer's default on the July 9, 2021 maturity date.

Moreover, Plaintiffs' contention that they could not discover their claims sooner because the CMB Defendants concealed information from them is specious. As detailed above, Plaintiffs knew that Group 48 would hold a junior position in the Project before they even invested in the Partnership. (*See supra* § II.C). They were specifically warned that Group 48's rights would be subordinated to the Senior Lender, such that any default on the Senior Loan could cause negative financial consequences for the Partnership. (*Id.*, citing PPM at p. 30-31). CMB Export even told the Limited Partners pre-investment

---

[8] "[T]he 'plaintiff-friendly inferences' required in the usual Rule 12(b)(6) analysis 'do[] not govern assertion of tolling exceptions to the operation of a statute of limitations.'" *Id.* at *9 (quoting *State ex rel. Brady v. Pettinaro Enters.*, 870 A.2d 513,525 (Del. Ch. 2005)). The plaintiff must plead with particularity facts to allow the court to determine whether the alleged fraud should have been discovered sooner. *Winklevoss Capital Fund, LLC v. Shaw*, No. 2018-0398-JRS, 2019 Del. Ch. LEXIS 75, *22 (Del. Ch. Mar. 1, 2019).

23

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

1    that there was "no assurance" that Group 48 would have any ability to purchase or

2    otherwise cure the Senior Loan in an event of default. (*Id.*).

3         Then, once COVID-19 hit, the General Partner wrote to the Limited Partners as

4    early as "March 25, 2020" with concerns about the Project. (SAC Ex. 4). In June 2020,

5    the General Partner again notified the Limited Partners about "delays in construction

6    progress," "cost overruns," shortages of "building materials," and decreased projected

7    "revenues of the Project." (*Id.*) It further stated that these issues would "**likely result in**

8    **further amendments to the existing loans in the foreseeable future**." (*Id.*, emphasis

9    added). Thus, Plaintiffs knew for over five years that the Project was in distress.

10        Yet they did nothing. They sat on their hands as the General Partner continued to

11   send them increasingly urgent notices about the Project throughout the rest of 2020,

12   2021, and 2022.[9] Indeed, by September 2021, CMB Export had already told Plaintiffs

13   that the outstanding balance of the Senior Loan *alone* was "approximately $1 billion" and

14   that the sale of the hotel portion of the Project would not cover even half of that. (SAC

15   Ex. 11). And once Reuben Brothers started threatening to foreclose on the Project, CMB

16   Export was transparent with the Limited Partners, telling them point-blank that any

17   foreclosure by a senior lienor "would also wipe out the Partnership's loan." (SAC Ex. 12).

18        Thus, Plaintiffs knew by as early as March 2020 that their investments were at

19   serious risk of total loss, with little to no recourse—a risk that Plaintiffs understood and

20   accepted in 2015 when they invested in Group 48 in the first place. As a result, they

21   cannot be said to have "lacked the ability to discover these issues" sooner and cannot

22   "be fairly described as blameless." *Dubose*, 2021 U.S. Dist. LEXIS 138475, at *10 (citing

23   *Smith v. Donald L. Mattia, Inc.*, No. 4498-VCN, 2012 Del. Ch. LEXIS 8, at *10 n.18 (Del.

24   Ch. Jan. 13, 2012) ("An injury is not 'inherently unknowable' where a plaintiff possesses

25   all of the tools to discover it, but simply waits a while.")). Plaintiffs therefore cannot toll

26   the statute of limitation, and their breach of fiduciary duty claim must be dismissed.

27     [9]  In violation of the "truthful pleading" rule, Plaintiffs have cherry-picked only certain
28   notices to attach to their SAC, omitting other key letters from the General Partner.

MEMORANDUM IN SUPPORT OF CMB DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

**F.    Plaintiffs' new breach of contract theory must be dismissed.**

In its March 31, 2025 Order, the Court dismissed Plaintiffs' breach of contract claim with prejudice as against the non-parties to the LPA. (Doc. 68 at 33). The Court let Plaintiffs proceed on their claim that the parties to the LPA breached LPA § IV.A.6 by allegedly failing "to notify the Plaintiffs that the Project was in default and that additional capital was needed to purchase the Senior Loan." (*Id.* at 33-34). Plaintiffs reasserted that theory in the SAC, but also pled a new theory—that "Defendants breached the [LPA] by failing to 'use commercially reasonable efforts' in negotiating the Loan Documents" when Reuben Brothers entered the capital stack in 2020. (SAC ¶¶ 242-244, citing LPA at 27).

This novel theory must be dismissed because there is no obligation in the LPA that *required* CMB Export or NK Immigration to "use commercially reasonable efforts" in negotiating any loan documents with the Developer, JPM, Colony, or Reuben Brothers in 2020. To the contrary, Plaintiffs' SAC is referring to LPA § VI.A.3, which states:

> [T]he General Partner shall have **full, exclusive, and complete discretion, power and authority**, to manage, control, administer, and operate the business and affairs of the Partnership…including, without limitation,…**the power**…to use commercially reasonable efforts to meet the objectives of the Partnership…"

(SAC Ex. 7, LPA § VI.A.3, emphasis added).

By its plain language, LPA § VI.A.3 only grants powers to the General Partner. It is not an "affirmative covenant" requiring the General Partner to take any action. *Cf. Alliance Data Sys. Corp. v. Blackstone Capital Partners V L.P.*, 963 A.2d 746, 769 (Del. Ch. 2009) (dismissing breach of contract claim premised on contractual provision that merely stated the defendant "had the authority and power" to take certain actions because this provision "did not impose obligations" on the defendant). For this reason, neither CMB Export nor NK Immigration can be said to have breached LPA § VI.A.3.

**IV.    CONCLUSION**

In conclusion, the CMB Defendants ask the Court to dismiss Mr. Lee from this case and to dismiss with prejudice Counts I, II, IV, and VI in full and Count VII in part.

25

1

2    DATED:  June 30, 2025                    By:  */s/ Karla Vehrs*

3                                             Scott S. Humphreys
                                              Karla Vehrs (*pro hac vice*)
4                                             Kathryn Wendt (*pro hac vice*)

5                                             Attorneys for Defendants
                                              CMB Export Infrastructure Investment
6                                             Group 48, LP; CMB Export LLC; NK
                                              Immigration Services, LLC; Neal Lee;
7                                             and Patrick Hogan

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, CA 90067-2915
Telephone: 424.204.4400

MEMORANDUM IN SUPPORT OF CMB DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT