UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHI BAI, et al.,

             Plaintiffs,

v.

CMB EXPORT INFRASTRUCTURE
INVESTMENT GROUP 48, LP, et al.,

             Defendants.

No. 2:24-cv-00807-DJC-SCR

ORDER

Plaintiffs are foreign nationals who claim they lost millions in investment funds in part due to Defendants' acts or omissions in connection with a redevelopment project. This case is presently before the Court on Defendant Lewis Brisbois Bisgaard & Smith LLP's and CMB Defendants' second Motions to Dismiss. (ECF Nos. 74, 76.)

For the reasons stated below, the Court grants in part and denies in part both Defendant Louis Brisbois' Motion to Dismiss and CMB Defendants' Motion to Dismiss.

## BACKGROUND

The Court provided a summary of the factual background of this case in its order resolving the prior motion to dismiss. (ECF No. 68.) Given the prior summary and that the facts are well known to the Court and parties, the Court will not repeat them here.

The Court previously granted Defendant Lewis Brisbois Bisgaard & Smith LLP's first motion to dismiss in its entirety and granted in part and denied in part CMB Defendants' first motion to dismiss.  (*See id.*)  The Court denied CMB Defendants' Motion as to (1) Plaintiffs' third cause of action for breach of fiduciary duty related to the Participation Agreement, (2) Plaintiffs' seventh and eighth cause of action, except as to the claim regarding representations of First Midwest Bank's credit status for which the motion was granted, and (3) Plaintiffs' tenth cause of action for breach of contract against Defendants CMB Export and NK.  CMB Defendants' Motion was granted as to all other claims.  Plaintiffs were granted leave to amend on all claims except Plaintiffs' breach of contract claim against Defendants Group 48 and Hogan, and Plaintiffs' UCL claim against CMB Defendants.

On April 30, 2025, Plaintiffs filed a Second Amended Complaint ("SAC") that is the present operative complaint.  (SAC (ECF No. 69).)  Defendants' Motions to Dismiss are fully briefed.  (LB Mot. (ECF No. 74-1); Opp'n to LB (ECF No. 79); LB Reply (ECF No. 80); CMB Mot. (ECF No. 76); Opp'n to CMB Mot. (ECF No. 81); CMB Reply. (ECF No. 82).)  The Court took this matter under submission without oral argument pursuant to Local Rule 230(g).  (ECF No. 83.)

# CMB DEFENDANTS' MOTION TO DISMISS AS TO DEFENDANT LEE FOR LACK OF PERSONAL JURISDICTION

## I.  Legal Standard

### A.  Personal Jurisdiction Generally

Rule 12(b)(2) allows a party to assert a lack of personal jurisdiction as a defense and request dismissal of the suit.  Fed. R. Civ. P. 12(b)(2).  "Although the defendant is the moving party on a motion to dismiss [for lack of personal jurisdiction], the plaintiff bears the burden of establishing that jurisdiction exists."  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002).  "[I]n the absence of an evidentiary hearing, the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'"  *Brayton Purcell LLP v. Recordon & Recordon*, 606

F.3d 1124, 1127 (9th Cir. 2010) (*quoting Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)).  "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues."  *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds by Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977)).  Facts presented by the plaintiff are taken as true for the purposes of a 12(b)(2) motion to dismiss, except where contradicted by an affidavit, and any "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."  *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citations omitted); *see Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("We may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor." (citations and internal quotations removed)).

"In exercising personal jurisdiction, a federal district court is constrained by the Fourteenth Amendment's Due Process Clause and the long-arm statute of the state in which it sits."  *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023).  California's long-arm statute allows the exercise of personal jurisdiction to the extent allowed by the United States Constitution.  *See* Cal. Code Civ. Proc. § 410.10.  Accordingly, the Court need only assess whether the exercise of jurisdiction in this case comports with due process.

**B.  General and Specific Jurisdiction**

"The Due Process Clause permits the exercise of personal jurisdiction if the defendant has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Impossible Foods*, 80 F.4th at 1086.  Courts may have general or specific jurisdiction over an entity depending on the nature and extent of that entity's contact

3

with the forum state.  A court may exercise general jurisdiction over a corporation in a state where the corporation is "at home," which is the case when its "affiliations . . . are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  This is generally where the corporation is incorporated and where it maintains its principal place of business.  *Id.*  Here, it is uncontested that the Court does not have general jurisdiction over Neal Lee.  (*See* Opp'n to CMB Mot. at 3–6 (arguing only that the Court has specific jurisdiction over Defendant Lee).)

Where general jurisdiction is lacking, courts may have specific jurisdiction over corporations if there is sufficient contact with the forum state and the claims arise out of that contact.  *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017) ("[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" (quoting *Goodyear*, 564 U.S. at 919)).  In the Ninth Circuit, specific jurisdiction is determined by a three-prong test: "(1) the defendant must either 'purposefully direct his activities' toward the forum or 'purposefully avail[ ] himself of the privileges of conducting activities in the forum'; (2) 'the claim must be one which arises out of or relates to the defendant's forum-related activities'; and (3) 'the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.'"  *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).  "The plaintiff bears the burden of satisfying the first two prongs of the test" while the burden of the third prong shifts to the defendant.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

### 1. Purposeful Availment

While the first prong of the specific jurisdiction test is often called the "purposeful availment" prong, courts situationally apply either a purposeful availment

4

or purposeful direction analysis. *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006). The question of whether to apply a purposeful direction or purposeful availment analysis "turns on the nature of the underlying claims." *Impossible Foods*, 80 F.4th at 1088 (citing *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021)). While there is no "rigid dividing line between purposeful availment and purposeful direction[,]" purposeful direction is generally preferred when analyzing tort claims as these claims typically involve fact patterns where "a defendant's conduct primarily occurs outside the forum state." *Id.* at 1088–89.

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (citations and internal quotations removed). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802. Likewise, purposeful direction involves intentional contact with the forum state. It is "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" that are relevant to the inquiry. *Walden v. Fiore*, 571 U.S. 277, 285 (2014). The defendant's mere knowledge that the plaintiff resides in the forum state "will not, on its own, support the exercise of specific jurisdiction." *Axiom Foods*, 874 F.3d at 1070. However, "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff . . . ." *Walden*, 571 U.S. at 286. Only purposeful contacts, and not random, fortuitous, or attenuated contacts will give rise to personal jurisdiction. *Id.*

### 2. Relation of Claim to Forum Activities

The claims brought by the plaintiff must arise out of or relate to the defendant's contacts with the forum in order for the court to exercise jurisdiction. *Ford Motor Co.*

5

*v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021).  However, a strict causal relationship is not required to satisfy the relation prong.  *Id.*  Rather, there need only be a "connection" between the forum-related activity and the injury claimed.  *Id.*  The Ninth Circuit employs a "but for" test to determine whether a plaintiff's claims arise out of the defendant's forum-related activities.  *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

### 3.  Reasonableness

The final prong of the personal jurisdiction analysis examines whether the court exercising jurisdiction would be reasonable.  *Menken*, 503 F.3d at 1058.  This determination requires consideration of seven factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."  *Id.*

## II.  Analysis

The Court finds that Plaintiffs have alleged sufficient facts to establish that this Court has personal jurisdiction over Defendant Neal Lee.  Plaintiffs assert that this Court has specific jurisdiction on the basis of purposeful availment.  In support, Plaintiffs allege in the SAC that Defendant Lee "was actively involved in negotiating and financing CMB's loan to the Borrower to construct the Project[,]" "had numerous communications with the various lenders and borrowers, their respective counsel, and CMB's counsel LB[,]" and "communicated with Michael Rosenfeld[,] the developer for the Project and personal guarantor of CMB's loan."  (SAC ¶ 39.)  These allegations, while still relatively minimal, are a far cry from the insufficient allegations contained in the First Amended Complaint.

Under the presently alleged facts, Defendant Lee engaged in business activities related to the Project, which was located in California, including negotiating financing and securing loans for the Project and communicating with the developer of the Project. This sort of affirmative action that promotes business in the forum state is sufficient to establish purposeful availment. *See Boschetto*, 539 F.3d at 1016. Defendant Lee's purported acts preceding the Project, as well as the contemplated future consequences of those negotiations, are sufficient to serve as the basis for a finding that Defendant Lee had minimum contacts with the forum. *See Burger King Corp v. Rudzewicz*, 471 U.S. 462, 479 (1985). These actions are also sufficiently connected to Plaintiffs' claims; but for Defendant Lee's purported coordination of the financing for the Project, these claims would not have arisen.

The Court's exercise of personal jurisdiction, at this stage, also satisfies the reasonableness factors: (1) Based solely on the facts alleged in the SAC, Defendant Lee's involvement in the forum through the Project was not minimal; (2) The burden in defending in the forum is minimal given Defendant Lee is represented with the CMB defendants who will be litigating in this forum regardless; (3) There is no clear conflict with the sovereignty of the defendant's state.; (4) California has some, if minimal, interest in adjudicating the dispute; (5) Judicial efficiency counsels in favor of keeping the claims against Defendant Lee with the rest of this action; (6) Similarly, Plaintiffs have an interest in resolution of Plaintiffs' claims in a single action which is partially reliant on the forum; and (7) There may exist alternative forums. Considering these factors together, a finding that the Court has personal jurisdiction over Defendant Lee is reasonable.

The Court notes that Defendants strongly object to the factual allegations made in the SAC. (CMB Mot. at 11.) But Defendants' challenge otherwise is a facial one and, as a result, the Court relies on the facts as alleged in the Complaint. As alleged, the facts in the SAC are sufficient to establish personal jurisdiction over Defendant

7

Lee.  The Court's ruling here does not prevent further challenges to personal jurisdiction at a later stage of these proceedings.

**MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**

Given that the Court previously addressed many of the arguments related to Plaintiffs' claims, the Court's discussion of these claims below does not repeat many of the factual and legal discussions provided in the Court's prior order.  Instead, the Court focuses on new factual or legal issues that are not resolved by that order.[1]  The Court also addresses arguments raised in connection with Defendant Louis Brisbois and CMB Defendants' Motions jointly given the overlapping issues presented in the briefing.

## I.  Legal Standard

A party may move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party."  *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).  However, if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice.  *Id.*  "A

---

[1] This includes the choice of law analysis conducted in the prior order.  As these issues are not directly raised in connection with the present motion, the Court does not provide any further discussion or analysis of which state's law is applicable.

8

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II. RICO

### C. 18 U.S.C. § 1962(c)

As with Plaintiffs' First Amended Complaint, Plaintiffs' first cause of action in the SAC is a RICO claim based on 18 U.S.C. § 1962(c). Section 1962(c) provides for claims against parties who conduct an enterprise through a pattern of racketeering activity. "To state a claim under [section] 1962(c), a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Odom v. Microsoft Corp.*, 486 F.3d 541, 547 (9th Cir. 2007) (en banc). Other cases have recognized a fifth element: "[T]he conduct must be . . . the proximate cause of harm to the victim." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014).

### 1. RICO Enterprise

To state a RICO claim, the plaintiff must first adequately allege the existence of an "association-in-fact" enterprise. For purposes of RICO, an "enterprise" is ". . . any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Satisfying the association-in-fact enterprise element requires that the plaintiff sufficiently plead that the enterprise had "(A) a common purpose, (B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic Props. E., LLC*, 751 F.3d at 997.

To establish a common purpose, a plaintiff must plausibly allege that the members of the enterprise had a common purpose. Courts disagree on whether conduct must be fraudulent to qualify as a common purpose. *See Singh v. AutoZone Parts, Inc.*, No. 2:23-cv-01379-TLN-CSK, 2024 WL 3673063, at *7 (E.D. Cal. Aug. 5, 2024) ("In the Ninth Circuit, the law is unsettled as to whether the common purpose must be fraudulent." (internal citations and quotations omitted)). Even so, there is

agreement that a RICO enterprise cannot be constituted of entities engaged in ordinary commercial activities.  *See Jimenez v. Serv. Emps. Int. Union Local 775*, 590 F. Supp. 3d 1349, 1362 (E.D. Wash. 2022) (collecting cases).

The Court previously dismissed Plaintiffs' section 1962(c) claim on the grounds that the allegations in the First Amended Complaint did not establish a common purpose outside Defendant Louis Brisbois' primary business activity and a routine business relationship between Defendant Louis Brisbois and the CMB Defendants. (ECF No. 68 at 13.)  Plaintiffs' claimed that the enterprise "engaged in an intentional scheme to defraud Plaintiffs in an effort to cover up its willful and wanton misconduct and/or gross negligence in protecting the Plaintiff's investment" through the use of communications to Plaintiffs and meritless lawsuits.  (ECF No. 37 ¶ 132–37.)  The Court found that these allegations could not establish a common purpose because they functionally asserted that the primary business activity of a member of the enterprise was conducted fraudulently.  (ECF No. 68 at 13 (citing *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., and Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1202–03 (C.D. Cal. 2011) and *Maye v. Online Land Sales LLC*, No. 2:23-cv-00173-DAD-CKD, 2024 WL 382294, at *9 (E.D. Cal. 2024)).)  The Court also rejected these allegations as insufficient, as they sought to establish a RICO enterprise based on a routine business relationship between parties.  (ECF No. 68 at 13 (citing *Pac. Recovery Sols. v. United Behav. Health*, 481 F. Supp. 3d 1011, 1026–27 (N.D. Cal. 2020) and *Gomez v. Guthy–Renker, LLC*, No. 14-cv-01425-JGB-KKx, 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015) (collecting cases)).)

Based on the allegations in the SAC, however, the Court finds that Petitioner's allegations are sufficiently similar to those raised in *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353 (9th Cir. 2005) such that Plaintiffs have adequately established the existence of a RICO enterprise.  Plaintiffs have alleged that Defendant Louis Brisbois and CMB Defendants acted with a common purpose of "shield both LB and CMB from liability and extract fees from Plaintiffs."  (SAC ¶ 136.)  Plaintiffs allege

10

that in doing so, the enterprise participants "operated beyond LB's standard role as counsel" in an effort to "misrepresent Plaintiffs' loss as caused by a 'secret' Participation Agreement, to preserve CMB and LB's reputations, maintain control of partnership funds, run the statute of limitations on any claims Plaintiffs would have against LB and CMB for their wrongful conduct, and enrich LB's pockets through payment for legal services." (*Id.* ¶¶ 136–37.) These allegations place Plaintiffs' claims in a sufficiently similar factual posture to *Living Designs*, such that they are not readily distinguishable at this stage.

In addition to identifying a common purpose, the SAC also adequately alleges an organization and the necessary longevity. Defendant Louis Brisbois contends that the allegations are insufficient as the purported enterprise's structure and the predicate acts are one and the same. (Def. Louis Brisbois Mot. at 8.) But this does not appear to be true. Plaintiffs have alleged that CMB Defendants and Defendant Louis Brisbois created an enterprise through which Defendant Louis Brisbois and CMB Defendants engaged in a broad scheme of litigation conduct and misrepresentative communications. But the connection between Defendant Louis Brisbois and CMB Defendants undoubtedly exists beyond the alleged predicate acts. Plaintiffs allege a sustained enterprise between CMB Defendants and Defendant LB through which Defendants "sought to preserve their reputations, avoid the risk of ruin, and maintain control of partnership funds." (SAC ¶ 135.) Thus, Plaintiffs have alleged both an enterprise consisting of the Defendants engaged in an ongoing scheme to conceal and defraud Plaintiffs, and separate predicate acts used to further this scheme.

CMB Defendants also contend that Plaintiffs have not adequately alleged that each defendant "directed the affairs" of the enterprise. (CMB Defendants' Mot. at 13–14.) But the SAC is reasonably clear about the alleged participation of each of the Defendants in the alleged enterprise. (SAC ¶¶ 142–61.) Contrary to CMB Defendants' assertions otherwise, the allegations in the SAC are not simply group pleading, but allegations of specific conduct by the individual defendants that relates to their

11

participation in the enterprise.  Defendant Louis Brisbois also raises an individual argument regarding the sufficiency of the allegation that Defendant Louis Brisbois directed the affairs of the enterprise.  (Def. Louis Brisbois Mot. at 8–9.)  Defendant Louis Brisbois categorizes Plaintiffs' allegations as boilerplate allegations that only show they "did nothing more than perform legal services for Group 48." (*Id.* at 9.)  But the actual allegations in the SAC clearly allege conduct beyond "[s]imply performing services for the enterprise . . . ."  *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008).Plaintiffs allege Defendant Louis Brisbois active direction of the alleged efforts to mislead the Limited Partners, mainly through the New York and California litigation. (*See* SAC ¶¶ 152–53.)  Plaintiffs clearly alleged Defendant Louis Brisbois took direction from CMB Defendants, knowingly implemented the efforts of the enterprise, and was indispensable to the achievement of the enterprise's goal in their role as the Partnership's counsel who could file and pursue the frivolous legal action necessary to conceal Defendants' misconduct.  *See Walter*, 538 F.3d at 1249 (noting that a defendant's actions did not meet the direction requirement where, among other things, "the conduct attributed to [the defendant] would not support recovery for giving, or taking, direction[,]" the defendant did not "knowingly implementing decisions of upper management[,]" and the defendant "was not indispensable to achievement of the enterprise's goal.").  As alleged in the SAC, Defendant Louis Brisbois' role is not that of an unaffiliated, uninvolved participant, but an active member of the "chain of command" of the enterprise.  *See id.*; *see also United States v. Oreto*, 37 F.3d 739, 750 (1st Cir. 1994).

Certainly, with the benefit of discovery, it may become clear that Defendant Louis Brisbois did not direct the alleged enterprise.  At this stage though, Plaintiffs' factual allegations are sufficient to establish the existence of an enterprise.

### 2. Pattern of Racketeering Activity

At the pleading stage, Plaintiffs have adequately alleged a pattern of racketeering activity.  Plaintiffs allege that Defendants committed predicate acts of

12

mail and wire fraud under 18 U.S.C. §§ 1341 and 1343 through their communications with the Limited Partners and the filing of two lawsuits.[2] (SAC ¶¶ 142-43, 145–46, 150–58, 165.) "Wire fraud and mail fraud share the same elements: (1) that the defendant formed a scheme to defraud; (2) used the United States wires [for wire fraud] or United States mail [for mail fraud] in furtherance of the scheme; and (3) did so with a specific intent to deceive or defraud."[3] *LD v. United Behav. Health*, No. 4:20-cv-02254-YGR, 2021 WL 930624, at *5 (N.D. Cal. Mar. 11, 2021). Plaintiffs have specified the alleged communications containing the alleged misrepresentations and identified specific pieces of testimony that they allege were false. These allegations, along with allegations as to Defendants' alleged scheme and intent, are sufficient at this stage to satisfy the elements of the alleged predicate acts. Defendants contend that Plaintiffs' allegations in this regard lack sufficient specificity. (Def. Louis Brisbois Mot. at 9–10; CMB Defs. Mot. at 14–16.) But as stated in the SAC, Plaintiffs have adequately identified specific affirmative, material misrepresentations with adequate specificity for the pleading stage. To the extent Defendants dispute whether the communications contained misrepresentations or the litigation was frivolous based on information outside the SAC, this is not appropriately resolved on motion to dismiss.

### 3. Causation

Defendants are correct that Plaintiffs' claims must partially fail for lack of causation. In the SAC, Plaintiffs assert that Defendants' actions caused harm to Plaintiffs through their "concealment of the loan documents and misrepresentations about the cause of the loss." (SAC ¶ 163.) Plaintiffs assert that "[b]ut for the Defendants' concealment of the Term Sheet and Purchase Option Event, Plaintiffs

---

[2] Plaintiffs also allege other predicate acts that are not addressed here, as the allegations of mail and wire fraud are sufficient. (*See* SAC ¶¶ 168–69.)

[3] Courts also recognize that mail and wire fraud require that there be "an affirmative, material misrepresentation" made by the defendant. *See United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir. 1986). Whether this is included as an element is inconsistent, but it remains a requirement for such claims.

would have demanded or undertaken action by July 2021 and averting [sic] the August 2022 foreclosure." (*Id.*)  But notably, the actions Plaintiffs cite in connection with this claim – including both lawsuits, Defendants' testimony in those suits, and the alleged misleading communication – occurred after this July 2021 date.  (*Id.* ¶ 143 (citing a September 14, 2021 email sent to the Limited Partners by Defendant Hogan); ¶¶ 145–146 (citing a July 27, 2022 investor update), 150 (citing an October 15, 2022 email sent to the Limited Partners by Defendant Hogan), 153–158 (discussing the lawsuits and related testimony from Defendants in those suits); *see id.* ¶¶ 111, 117 (stating that the California and New York lawsuits were filed on October 14, 2022, and February 6, 2023, respectively).)  As these events post-date July 2021, when Plaintiffs assert they would have taken action, Plaintiffs fail to establish any causal connection between the loss of their investment and Defendants' alleged actions.  Thus, all portions of Plaintiffs' RICO claims predicated on the loss of their investment based on Plaintiffs' inability to demand or undertake action by July 2021 fail for lack of causation.

However, Plaintiffs also assert that they were injured through the "depleti[on of] Partnership assets to the tune of $3.8 million" through the lawsuits filed in New York and California.  (SAC ¶ 166.)  Plaintiffs further add onto this point by alleging that "Defendants obliterated any chance Plaintiffs had at repayment of their investments by depleting the Partnership of all available assets and prohibiting Plaintiffs from selling their partnership interests before they were essentially worthless." (*Id.*)  This harm is sufficiently causally linked to Defendants' alleged misconduct in concealing and misrepresenting their knowledge of the events that led to the loss of Plaintiffs' investment.

* * * *

14

Given the above, the Court finds that Plaintiffs have sufficiently alleged a claim under 18 U.S.C. § 1962(c).  CMB Defendants and Defendant Louis Brisbois Motions are denied as to this claim.[4]

### A.  18 U.S.C. § 1962(d)

Defendants move to dismiss Plaintiffs RICO conspiracy claim under section 1962(d) on the basis that Plaintiffs' section 1962(c) substantive RICO claim fails.  (Def. Lois Brisbois' Mot. at 18–19; CMB Defs.' Mot. at 19–20.)  However, for the reasons stated above, the Court finds that Plaintiffs have alleged a substantive RICO claim.  Accordingly, Defendants' Motions to Dismiss as to Plaintiffs' section 1962(d) claim are denied.

## III. State Law Claims

### A.  Claims that Include Defendant Louis Brisbois

#### 4.  Aiding and Abetting and Civil Conspiracy – Agent Immunity Rule

Defendant Louis Brisbois argues that Plaintiffs' claims for aiding and abetting breach of fiduciary duty and civil conspiracy are barred by California's Agent's Immunity Rule.  "The Agent's Immunity Rule shields an attorney who merely acted as an agent or employee of a third party when the third party had a duty to the plaintiff." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1037 (9th Cir. 2016).  The two significant limitations on this rule are that it does not prevent claims against "[1] an attorney who had an independent legal duty to the plaintiff, or [2] an attorney who went beyond a professional duty as part of a conspiracy for the attorney's financial gain." *Id.*

In addressing the state law claims against Defendant Louis Brisbois in connection with the prior motion to dismiss, the Court extensively discussed the application of the agent's immunity rule and the basis for any potential duty owed by

---

[4] At this stage, the Court also rejects CMB Defendants' argument that the RICO claim is duplicative of the breach of contract claim.  Plaintiffs' breach of contract claim is limited in scope for reasons discussed below.  *See infra* Motions To Dismiss for Failure to State a Claim, III.C.

15

Defendant Louis Brisbois to Plaintiffs.  (ECF No. 68 at 22–26.)  The Court relies on the same legal principles here.

Plaintiffs assert that Defendant Louis Brisbois owed them a duty under both *Goodman* and fiduciary representation theories of duty.  Under the *Goodman* intended beneficiary theory, Plaintiffs argue they, as limited partners, were the intended beneficiaries based on the statement in the Limited Partnership Agreement ("LPA") that part of the intended business of the partnership was to permit the limited partners to apply for an EB-5 visa as well as provisions of the loan agreement between CMB and CPMB which ensured that the loan would permit the limited investors to apply for EB-5 visas.  These arguments confuse the issue under a *Goodman* theory of duty.

As stated in the Court's prior order, *Goodman* supports imposing a duty (and thus liability) on agents where ". . . the purpose of retention of the attorney was for <u>the specific objective</u> of creating such benefit . . ." for the third party.  *Johnson v. Superior Ct.*, 38 Cal. App. 4th 463, 471 (1995) (emphasis added).  Notably, the question is the purpose of <u>retention of the attorney</u>, not the purpose of the individual or organization the attorney represents.  Thus, while the partnership might have had a partial stated purpose to permit the limited partners to apply for EB-5 visas,[5] this does not establish that the specific objective in retaining Defendant Louis Brisbois was to provide the limited partners with that specific benefit.  Instead, the alleged actions are entirely consistent with an attorney retained for the general representation of a partnership, which naturally includes drafting agreements and contracts that include provisions consistent with the goals of the partnership.  Beyond the simple inclusion of these

---

[5] The Court notes that the language from the LPA cited by Plaintiffs states only that the partnership is intended to be structured so that the limited partners were "able to <u>apply</u> for a visa pursuant the EB-5 Immigrant Investor Program."  (SAC ¶ 179; *see* LPA (ECF No. 69-7) § III.A.)  This thus confirms that the purpose of the partnership was not to provide the limited partners with visas, and this goal was fully satisfied to the extent that the limited partners were able to apply for visas.

16

terms, Plaintiffs do not allege that Louis Brisbois ever took any action to secure EB-5 visas for the limited partners.

This alone is likely dispositive of a *Goodman* theory of duty.  *See Goldberg v. Frye*, 217 Cal. App. 3d 1258, 1268 (1990); *see also Johnson*, 38 Cal. App. 4th at 471–42.  The remaining *Goodman* factors – "(2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; (6) the policy of preventing future harm; (7) the likelihood that imposition of liability might interfere with the attorney's ethical duties to the client; and (8) the likelihood that such liability would impose an undue burden on the legal profession[,]" *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 832 (2005) – also weigh against the imposition of a duty. These remain largely the same as discussed in the prior order: the harm was foreseeability but it was not certain that the limited partners would suffer injury; there is a connection between the conduct and the harm as the Partnership was tied to Plaintiffs' EB-5 visas but it is attenuated as Defendant Louis Brisbois had no direct involvement in the immigration proceedings; some moral blame is attachable to Defendant Louis Brisbois under the alleged facts; and the final three policy-based factors weigh against the imposition of a duty.  (*See* ECF No. 68 at 24–25.)

Plaintiffs also assert that Defendant Louis Brisbois had a duty based on fiduciary representation.  (Opp'n to LB Mot. at 20.)  But Plaintiffs' assertion that a duty exists on this basis fails to cure the issue identified in the Court's prior order.  In short, the Court previously rejected that Plaintiffs had established the existence of a duty on the basis of fiduciary representation on the grounds that "Plaintiffs have not provided any additional factual allegations that would justify creating a legal duty for Defendant Louis Brisbois via the general partners' duty to the limited partners."  (ECF No. 68 at 26.)  As stated in the Prior order, "[t]he authorities since [*Morales v. Field, DeGoff, Huppert & MacGowan*, 99 Cal. App. 3d 307 (1979)], while not directly taking

17

exception to the rule of the case, appear to have held uniformly that the legal representation of a fiduciary, standing alone, does not impose upon the attorney a fiduciary obligation to the beneficiary." *Johnson*, 38 Cal. App. 4th at 473.  Plaintiffs do not raise any further facts to support this duty and instead simply rest on Defendant Louis Brisbois provision of services to the General Partner, who in turn owed duties to the Limited Partners.  For the same reasons stated in the Court's prior order, this is insufficient to create a duty. (*Id.*)

Given the above, Plaintiffs have not identified a basis to impose an independent duty on Defendant Louis Brisbois.  As such, Plaintiffs' claims for aiding and abetting breach of fiduciary duty and civil conspiracy are barred by California's Agent's Immunity Rule.  Defendant Louis Brisbois' Motion is granted as to these claims.[6]

### 5. Legal Malpractice

The above determination that Plaintiffs have not established that Defendant Louis Brisbois owed a duty to Plaintiffs is also dispositive of Plaintiffs' legal malpractice claim.  The elements of a legal malpractice claim in California are: "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence." *Wilkinson v. Zelen*, 167 Cal. App. 4th 37, 45 (2008).  As the question of duty is the same as the *Goodman* determination above, *see Osornio v. Weingarten*, 124 Cal. App. 4th 304, 319–20 (2004), Plaintiffs' legal malpractice claim is deficient on the same basis.  Accordingly, Defendant Louis Brisbois Motion is granted as to this claim, and Plaintiffs' Legal Malpractice claim is dismissed.

---

[6] As Plaintiffs' claims are predicated on a civil conspiracy between Defendant Louis Brisbois and CMB Defendants, this is dispositive of the civil conspiracy claim as a whole.  CMB Defendants' arguments against the sufficiency of the civil conspiracy claim are moot.

18

**B. Breach of Fiduciary Duty**

Plaintiffs' breach of fiduciary duty claim fails as brought against Defendant Group 48.  The SAC does not attribute any actions to Group 48 directly, and Group 48 cannot be held liable based on the actions of the general partners.  *Arnold v. Soc. For Sav. Bancorp, Inc.*, 678 A.2d 533, 540 (Del. 1996).

Plaintiffs' breach of fiduciary duty claim against Defendants Hogan and Lee must also fail.  While the human director of an entity general partner may have some limited fiduciary duty, that duty is limited and arises where the owner "acted in a way that is potentially advantageous to their personal interests and at the expense of the limited partners . . ." and caused the general partner to breach its fiduciary duty.  *Gelfman v. Weeden Invs., LP*, 792 A.2d 977, 992 n.24 (Del. Ch. 2001); *see In re USACafes, L.P. Litig.*, 600 A.2d 43, 49 (Del. Ch. 1991).  The SAC includes allegations related to Defendants Lee and Hogan in connection with their alleged breach of fiduciary duty.  (*See* SAC ¶¶ 202, 205–215.)  But the SAC fails to establish that these defendants caused the general partner to breach its fiduciary duties in order to reap any personal benefit.  Accordingly, CMB Defendants' Motion to Dismiss is also granted as to Plaintiffs' breach of fiduciary duty claim as to Defendants Hogan and Lee.

Finally, CMB Defendants contend that a portion of Plaintiffs' breach of fiduciary duty claim is untimely.  In their Opposition, Plaintiffs argue that the discovery rule tolled Plaintiffs' breach of fiduciary duty claims.  In response, Defendants first argue that this rule only applies where a defendant was allegedly engaged in "self-dealing" that involves "theft of Partnership assets or usurpation of Partnership opportunities." (CMB Reply at 14.)

To the extent Plaintiffs argue that they can assert equitable tolling based exclusively on reliance on fiduciary duty, this might well be true.  But self-dealing is not the only recognized scenario where the discovery rule may be invoked.  The delayed-discovery rule also applies "where the defendant has fraudulently concealed key

19

facts[,]" without any requirement for self-dealing.[7]  *See Erisman v. Zaitsev*, No. 2020-0903-JRS, 2021 WL 6134034, at *12 (Del. Ch. Dec. 29, 2021).  Plaintiffs plainly assert that Defendants fraudulently concealed key facts from Plaintiffs.  For example, in paragraph 201 of the SAC within the section on breach of fiduciary duties, Plaintiffs assert that "[s]ince receipt of the Term Sheet, Defendants have sought to hide from Plaintiffs their malfeasance in approving and executing the Fourth Amendment to Intercreditor Agreement . . . ."  Thus, at this stage, application of this rule, based exclusively on the allegations in the SAC, is at least facially appropriate.

Defendants also note that, regardless of this rule, certain portions of the breach of fiduciary duty claim may be untimely as they precede any alleged concealment. However, resolution of these arguments appears to be at least partially reliant on information outside the SAC to determine when information was available to the Plaintiffs.  (*See* CMB Mot. at 23 (citing the Confidential Private Placement Memorandum attached to CMB Defendants' Motion as an exhibit).)  As such, any determination in this regard is not appropriately resolved at this stage and is better left to the summary judgment stage of these proceedings.

Accordingly, Defendants' Motion to Dismiss Plaintiffs' breach of fiduciary duty claim is granted as to Defendants Lee, Hogan, and Group 48, but it is otherwise denied.

### C. Breach of Contract

In the SAC, Plaintiffs bring additional breach of contract claims alleging the General Partners violated article IV, section C.3 and article VI, section A.3 of the Limited Partnership Agreement ("LPA") by failing to use commercially reasonable

---

[7] To the extent Defendants interpret Plaintiffs' argument as exclusively raising the equitable tolling doctrine, this is a misreading of Plaintiffs' position.  In addition to raising equitable tolling, Plaintiffs secondarily assert that the discovery rule should apply to Plaintiffs' breach of fiduciary duty claim "in light of Defendants' concealment endeavors."  (Pl.'s Opp'n at 22.)  While the clarity of the briefing in raising this argument leaves something to be desired, this argument is entirely consistent with the SAC in arguing that Defendants fraudulently concealed key facts.

efforts to meet the objectives of the Partnership.[8] (*See* SAC ¶¶ 242–43.)  Article IV, section C.3 of the LPA states:

> Investments. The Partnership shall use commercially reasonable efforts to advance and accomplish the Partnership's business and purpose as set forth in Article III of this Agreement. The Partnership intends to limit its initial investment activities to investments in a private business located within the geographical jurisdiction of the Regional Center as approved by the USCIS in order to assist in job creation within the areas comprising the current geographic scope of the Regional Center. Nothing contained in this Section shall be construed to limit the General Partner's ability to reinvest the Cash Flow from Return of Investment in another investment, even if such reinvestment is outside of the geographical jurisdiction of the Regional Center, if such reinvestment is consistent with the business and purpose of the Partnership as stated in Article III.

(LPA (ECF No. 69-7) § IV.C.3.)  Article VI, section A.3 grants the General Partner the power "to use commercially reasonable efforts to meet the objectives of the Partnership," along with specific provisions elucidating what this power permitted. (LPA § VI.A.3.)

As Defendants identify, neither of these provisions imposes a duty of the general partners that would support a breach of contract claim.  Article IV, section C.3 seemingly imposes duties on the partnership, not the general partners.  Plaintiffs conclusively state that this provision "requires the General Partners to fulfill their duties using 'commercially reasonable efforts' in negotiating the Loan Documents."  (Opp'n at 24.)  But they fail to address or explain why this provision should be read to impose a duty on the partnership where, by its express terms, it imposes that duty on the partnership.  Similarly, by its express language, article VI, section A.3 only grants powers to the General Partners; it does not impose any duties.  While Plaintiffs

---

[8] The Court previously permitted Plaintiffs to proceed on a portion of their original breach of contract claim.  This order does not address the portion of the claim that was already permitted.

naturally object to this reading, they do not present any basis to believe that an alternate reading is appropriate.  (Opp'n at 24.)

Accordingly, Plaintiffs' breach of contract claim based on a violation of an express duty within the LPA to use "commercially reasonable efforts" must fail as the LPA does not appear to impose such a duty on the General Partners.  Defendants' Motion shall be granted as to this claim, with leave to amend.

## CONCLUSION

Accordingly and for the reasons stated above, IT IS HEREBY ORDERED that:

1. Defendant Louis Brisbois Motion to Dismiss (ECF No. 74) is GRANTED IN PART as to Plaintiffs' state law claims against Defendant Louis Brisbois and is DENIED IN PART as to Plaintiffs' First and Second Causes of Action under 18 U.S.C. §§ 1962(c) and (d).

2. CMB Defendants' Motion to Dismiss (ECF No. 76) is GRANTED IN PART and DENIED IN PART as follows:

    a. Defendants' Motion is granted as to Plaintiffs' civil conspiracy as well as Plaintiffs' breach of contract claims based on article VI, section A.3 of the LPA.

    b. Defendants' Motion is also granted as to Plaintiffs' Breach of Fiduciary Duty claim against Defendants Lee, Hogan, and Group 48.

    c. Defendants' Motion is denied as to Plaintiffs' First and Second Causes of Action under 18 U.S.C. §§ 1962(c) and (d).

    d. Defendants' Motion is also denied as to the request to dismiss Plaintiffs' breach of fiduciary duty claim as untimely.

3. Plaintiffs are granted leave to amend only as to Plaintiffs' breach of contract claim.  Should Plaintiffs seek to amend their complaint further, their Third Amended Complaint must be filed within fourteen days of this Order.  Any such amendment shall be limited only to Plaintiffs' breach of

22

contract claim.  Leave to amend is denied as to all other dismissed claims on the ground that further amendment would be futile.

IT IS SO ORDERED.

Dated:   **March 31, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE